204 N.J. Super. 1 (1983)
497 A.2d 868
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KENNETH HARDISON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 10, 1983.
Decided June 2, 1983.
*3 Before Judges POLOW and BRODY.
Joseph H. Rodriguez, Public Defender, attorney for appellant (Robert A. Jacobson, designated counsel, of counsel and on the brief).
Irwin I. Kimmelman, Attorney General, attorney for respondent (Jane A. Grall, Deputy Attorney General, of counsel and on the letter brief).
PER CURIAM.
Defendant Kenneth Hardison and his co-defendant Jerry Jackson were charged in the same indictment with conspiracy to commit robbery, armed robbery of three individuals in a tavern on November 19, 1980, possession of a handgun for an unlawful purpose, and aggravated assault and armed robbery of a motel manager in his office later the same night. Hardison was also charged with possession of brass knuckles for an unlawful purpose.
Both defendants were found not guilty of the tavern robberies[1] but were convicted on all other charges. Prison terms were imposed on Hardison as follows: on the conspiracy charge, a five year term; on the charge for possession of a gun for an unlawful purpose, a five year term consecutive to the conspiracy sentence; on the aggravated assault charge, a ten year term consecutive to the conspiracy sentence; on the charge for armed robbery of the motel manager, a fifteen year term consecutive to the conspiracy sentence; on the charge for possession of brass knuckles for an unlawful purpose, a five year term concurrent to all other sentences. All of the sentences were imposed to run concurrently except for the conspiracy sentence to which all others (except the brass knuckles sentence) were made consecutive. Thus, an aggregate term of *4 twenty years in prison was imposed together with parole ineligibility for five years and a $125 penalty payable to the Violent Crimes Compensation Board.
On this appeal, defendant Hardison challenges the trial judge's refusal to grant separate trials to each of the two defendants, the refusal to sever the counts of the indictment for trial, admissibility of identification evidence, failure to dismiss the conspiracy charge, admissibility of his out of court statements, certain evidence rulings, and the weight of the evidence. He also attacks the sentence imposed as manifestly excessive. Co-defendant Jackson has filed a separate appeal which we will resolve in a separate opinion.
On the evening of November 19, 1980, co-defendants Jackson and Hardison travelled from Paterson to New Brunswick with Dennis Porter and Bernard Brown in a 1974 red and white Cadillac. When Jackson got into the car he was asked if he wanted "to make some money." All four arrived at the Lincoln Cafe, a tavern in New Brunswick, at approximately 11:30 p.m. They ate and drank and played pinball and pool. When only three other persons, two customers, Patrick Howlin and Janet Marino, and the bartender, Donald Wilson, remained in the tavern, one of Hardison's group jumped on the bar and pointed a gun at Wilson's head. Wilson was forced to lie on the floor behind the bar and his watch was taken. One of the robbers took $301 from the cash register. Marino's pocket book was taken from her and she was ushered into the men's room followed by Howlin and Wilson. The four robbers then moved the cigarette machine against the door and left the tavern.
At approximately midnight Hardison and his three companions arrived at the Edison Motor Lodge. Two of them entered the registration office. After inquiring about accommodations, they told the manager that they would go outside to confer with their girlfriends. They soon returned and robbed the manager at gun point. The victim, who identified Jackson as the gunman and Hardison as his companion, was forced to his *5 hands and knees in the rear office where he was robbed. One of the robbers, identified as Jackson said, "Let's shoot him" but the other identified as Hardison replied "Let's knock him cold because he won't go any place." With that, Hardison, using brass knuckles, punched the manager in the mouth. The two robbers were then observed fleeing toward a red and white Cadillac.
Shortly thereafter, the red and white Cadillac was observed a few blocks away by police officers in an unmarked car. When they were advised that a red and white Cadillac had been involved in a motel robbery, the police gave chase. The Cadillac stopped suddenly when it straddled a cement divider and the four men fled on foot. Jackson was discovered under a school bus in a parking lot nearby. Hardison was apprehended from underneath a parked car. At 1:40 a.m. Howlin and Marino identified Hardison and Jackson as participants in the tavern robbery. Wilson also identified Hardison but was unsure of Jackson. A day or two later the motel manager, while at home, identified Jackson and Hardison from photographic arrays.
Jackson and Hardison both gave a number of oral statements to the police. Both admitted their presence in the tavern and the occurrence of the robbery. They variously accused their other two companions and denied any intention to participate. In any event, both were acquitted of the tavern robbery charges.
In their statements they also conceded that they stopped at the Edison Motor Lodge. Jackson variously claimed that only Brown and Porter went in. In another statement he admitted being "involved with" the motel robbery. Hardison admitted that he went into the motel office "to inquire about a room." He claimed that Brown and Porter committed the armed robbery. In another statement, however, Hardison admitted involvement in the robbery.
*6 We have considered the argument offered by both co-defendants challenging the denial of their motions for separate trials. Our review of the record including the various inculpatory statements made by each of them fully satisfies us that those statements were "interlocking confessions" which could be admitted in a joint trial within the doctrine of Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979).
In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), a nontestifying codefendant's confession implicating Bruton was admitted into their joint trial with a cautionary instruction. Id. at 124-125, 88 S.Ct. at 1621-1622. The United States Supreme Court held that admission of such a confession violated Bruton's "right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." Id. at 126, 88 S.Ct. at 1622. The Court reasoned that Bruton was denied his right of confrontation because the codefendant's confession was testified to by another and thus was "in a form not subject to cross-examination." Id. at 128, 88 S.Ct. at 1623. Furthermore, it rejected the premise that a properly instructed jury could and would ignore "the confessor's inculpation of the nonconfessor in determining the latter's guilt." Id. at 129, 88 S.Ct. at 1624.
However, in Parker v. Randolph, supra, Justice Rehnquist, writing for a plurality of the United States Supreme Court, held that when a defendant has confessed and his confession interlocks with that of his codefendant, admission of the interlocking confessions in a joint trial with proper limiting instructions "conforms to the requirements of the Sixth and Fourteenth Amendments to the United States Constitution." Id., 442 U.S. at 75, 99 S.Ct. at 2140. Examining the effect of this new rule upon the right of cross-examination, a key factor in Bruton, Justice Rehnquist stated
... the incriminating statements of a codefendant will seldom, if ever, be of the `devastating' character referred to in Bruton when the incrimated defendant has admitted his own guilt. The right protected by Bruton  the `constitutional right of cross-examination' id. [391 U.S.] at 137 [88 S.Ct. at 1628], has far less *7 practical value to a defendant who has confessed to a crime than to one who has consistently maintained his innocence. [at 73, 99 S.Ct. at 2140].
* * * * * * * *
But when the defendant's own confession is properly before the jury, we believe that the constitutional scales tip the other way. The possible prejudice resulting from the failure of the jury to follow the trial court's instructions is not so `devastating' or `vital' to the confessing defendant to require departure from the general rule allowing admission of evidence with limiting instructions. [at 75, 99 S.Ct. at 2140].
In State v. Young, 46 N.J. 152 (1965), the New Jersey Supreme Court anticipated the Bruton holding in its ruling that in joint trials the out-of-court confession of a defendant implicating a codefendant may not be admitted at trial unless there can be effective deletion of all references to the nonconfessor and in the event effective deletion is not feasible, there must be separate trials. Id. at 159. Notably, the Young court reasoned that a cautionary instruction that the confession could only be considered as evidence against the confessor was inadequate to protect the codefendant's right to a fair trial. Id. at 157-158. See R. 3:15-2; State v. Corsi, 86 N.J. 172, 175-177 (1981). However, even where violations of Young and Bruton have been found, our courts have not required automatic reversal where the evidence against the nonconfessor defendant is overwhelming and any prejudice to him is harmless beyond a reasonable doubt. In short, our courts have applied a "harmless error" approach to Young and Bruton violations. See State v. Gardner, 54 N.J. 37, 45 (1969); State v. Biddle, 150 N.J. Super. 180, 183 (App.Div. 1977), certif. den. 75 N.J. 542 (1977).
We are fully satisfied that the trial of both defendants together and use of their confessions with limiting instructions was proper under the "harmless error" approach of State v. Young, or the per se rule adopted by the United States Supreme Court in Parker v. Randolph, supra. All of the statements of both defendants admitted their presence at the scene of both robberies although both defendants tended to minimize their participation. Neither the refusal of separate trials for *8 each defendant nor use of their statements in the joint trial was reversible error.
Hardison challenges the trial judge's conclusion that he was "adequately and fairly warned of [his] constitutional rights to remain silent, to have counsel, to have counsel appointed for [him] and [to] cease speaking prior to [making] any inculpatory statements...." He argues that there was no knowing and intelligent waiver of these rights and that he did not respond freely and voluntarily to questions.
Officers testified that defendant was first given Miranda warnings at the time of his arrest. When asked if he understood those rights, defendant said yes and did not request an attorney. Defendant then made a statement to the arresting officer, Detective Bracaglia, immediately after they arrived at Clark police headquarters.
After the show up identifications by the Lincoln Cafe victims, Hardison was interviewed by Detective Schuster who advised him of his rights. Defendant said he understood his rights and when asked if he wanted to talk he said he would tell them what happened. He was then taken to Edison Township where a sergeant read him his rights. The sergeant and another officer who was present at the time signed the card from which the rights were read. Defendant said he understood his rights and did not ask for a lawyer. As the officers who witnessed[2] the reading took defendant to his cell, they asked if he was present at the Edison Motor Lodge robbery. He then gave an informal statement.
A fourth officer, Detective Nagy, took a statement from Hardison the following day, after he ascertained from defendant that he had been informed of his rights at the time of his arrest, understood those rights, did not want a lawyer present, and wanted to make an informal statement. Defendant said *9 that he had signed a Miranda card after the arresting officer read him his rights.
In the totality of the circumstances, there was support in the record for the trial judge's conclusion that defendant Hardison had received the necessary warnings and understood his Miranda rights but nonetheless chose to speak. At least in "some cases waiver can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).
In determining the issue of voluntariness, "a court should assess the totality of all the surrounding circumstances." State v. Miller, 76 N.J. 392, 402 (1978).
... It should consider the characteristics of the suspect and the details of the interrogation. Some of the relevant factors include the suspect's age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved. Schneckloth v. Bustamonte, 412 U.S. 218, 226 [93 S.Ct. 2041, 2047, 36 L.Ed.2d 854] (1973). A suspect's previous encounters with the law has been mentioned as an additional relevant factor. State v. Puchalski, 45 N.J. 97, 101 (1965). [Id. at 402.]
The record here supports the conclusion that Hardison was informed of his Miranda rights, understood them and made several informal, inculpatory statements. Hardison asks this court to infer that he was subjected to physical abuse by Detective Bracaglia after the arrest and en route to the Clark police station during which time he made his most inculpatory statement. He bases this contention on the fact that one officer described him as being in "fine condition" at the time of the arrest. Detective Nagy, however, testified that when he saw defendant in the cell block before taking his statement, he had a cut on his lip. According to Nagy, Hardison told him that he cut his lip during a fall. Nagy denied the defense attorney suggestion that Hardison got the cut on his lip when "a policeman smacked him on his mouth."
We conclude that there is substantial credible evidence in the record to support the trial court findings that defendant was given his Miranda warnings, that he knowingly and intelligently *10 waived them, and that his statements were voluntary. There is, in fact, no support in the record for a finding of physical coercion.
Defendant also attacks the joinder of offenses as prejudicial. Here, again, our analysis of the record satisfies us that the trial judge did not err in denying the motions for separate trials for the Lincoln Cafe and Edison Motor Lodge offenses.
Appellant contends that the two robbery charges were based upon separate and unrelated events. We find, to the contrary, that the record includes evidence of a "common scheme or plan" rather than separate and unrelated events. Thus, the offenses could properly be joined for trial. R. 3:7-6. See State v. Whipple, 156 N.J. Super. 46 (App.Div. 1978). Furthermore, the charge of conspiring to rob encompassed both robberies as overt acts including the actions of the participants before, during and after both events. Accordingly, the joint trial was required by the interrelated nature of the charges. See State v. Yormack, 117 N.J. Super. 315, 331 (App.Div. 1971), certif. den. 60 N.J. 138 (1972), cert. den. 407 U.S. 925, 92 S.Ct. 2459, 32 L.Ed.2d 812 (1972).
Finally, in view of Jackson's and Hardison's arguments that evidence of one robbery may have been used to establish guilt in the other robbery, the test of prejudice is "whether a jury could arrive at a determination on each charge irrespective of the evidence concerning guilt on other charges." State v. Cole, 154 N.J. Super. 138, 143 (App.Div. 1977), certif. den. 78 N.J. 415 (1978). In this case, the jury's action in acquitting defendants of the robbery of the Lincoln Cafe victims while convicting them of the Edison Motor Lodge robbery demonstrates that it was able to consider the evidence relating to each of the charges separately. See State v. Hines, 109 N.J. Super. 298, 306 (App.Div. 1970), certif. den. 56 N.J. 248 (1970), cert. den. 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970).
We have examined appellant's allegations of error with regard to the various identification procedures. We find them to *11 be without merit. Since both defendants admit that they were present in the tavern and were found not guilty of the tavern robbery charges, the identifications by the tavern victims are academic. With respect to the photographic identifications by the motel manager, we are satisfied that the identification procedures were not unduly suggestive. See State v. Matlack, 49 N.J. 491, 498 (1967). Furthermore, the in-court identifications were properly admitted without substantial likelihood of irreparable misidentification. See State v. Ford, 165 N.J. Super. 249, 254 (App.Div. 1978) (Michels, J., dissenting), rev'd on dissent, 79 N.J. 136 (1979).
Hardison argues that there was insufficient evidence to convict him of conspiracy. Although we find that contention without merit, we are satisfied that the conspiracy conviction must, in any event, be merged with the armed robbery conviction. On Jackson's appeal we have agreed with his contention that the criminal code prohibits separate convictions for conspiracy and the substantive robbery offense. N.J.S.A. 2C:1-8(a)(2). Here, the conspiracy count would encompass both the Edison and New Brunswick robberies. The State suggests that defendant was found guilty of conspiring to commit the tavern robbery but was not convicted of that substantive offense. Thus, reasons the State, the conspiracy had "multiple and additional objectives" and somehow avoids the statutory bar.
There is no way to determine whether the jury convicted defendant of conspiracy to commit the tavern robbery or conspiracy to commit the motel robbery or conspiracy to commit both. The essence of conspiracy is the illegal agreement. The illegal agreement included robbery and the jury found defendant guilty of the motel robbery within the ambit of the conspiracy. The conspiracy conviction and the sentence imposed thereon must be vacated.
In dealing with the appeal of co-defendant Jackson we noted that the trial judge conceded that his conviction for possession of a weapon for an unlawful purpose merged with *12 the armed robbery conviction. The judge attempted to deal with the merger by imposing concurrent sentences. Since defendants are entitled to have their records free of the merged weapons count, we conclude that both defendants' convictions and sentences for possession of a weapon for an unlawful purpose must be vacated. State v. Bono, 128 N.J. Super. 254, 258 (App.Div. 1974), certif. den. 65 N.J. 572 (1974).
Hardison also challenges as prejudicial admission into evidence of his sneakers, a pair of brass knuckles and a photograph showing injuries inflicted on the motel manager. We have examined the record and conclude that the ruling constituted a proper exercise of the trial judge's discretion. See State v. Boratto, 80 N.J. 506, 525 (1979); Evid.R. 4. We also conclude that appellant's argument concerning the weight of evidence is clearly without merit. R. 2:11-3(e)(2).
We do not understand Hardison's argument that he was sentenced to 35 years in prison. As noted above, the aggregate sentence imposed on Hardison was 20 years, which is equal to the aggregate sentence imposed on Jackson. Although Hardison received an additional concurrent five year term for possession of brass knuckles with an unlawful purpose, that did not affect his aggregate sentence. In any event, merger of the conspiracy conviction will reduce the aggregate sentence to 15 years, all remaining sentences running concurrently.
We have considered the nature of the offenses, the comments of the sentencing judge and the contents of the presentence investigation. We are fully satisfied that the sentences imposed, except as must be vacated consistent with this opinion, are not manifestly excessive. State v. Whitaker, 79 N.J. 503, 512 (1979). However, the mandatory term of parole ineligibility was imposed with no indication of the conviction to which it is applicable. We conclude that it was intended to apply to the robbery offense and was therefore not inappropriate under the circumstances. N.J.S.A. 2C:43-6(b).
*13 The sentences on the conspiracy and possession of a weapon for unlawful purposes charges are vacated. In all other respects the convictions and sentences imposed are affirmed. The matter is remanded to the trial court to amend the judgment to provide that the term of parole ineligibility applies to the robbery conviction and to conform with this opinion.
NOTES
[1] The trial judge granted defendants' motion for acquittal with regard to one of the tavern robberies. The jury acquitted defendants of the other two tavern robbery charges.
[2] Apparently, a second officer was present when the Sergeant informed Hardison of his rights but he did not sign the Miranda card.