678 A.2d 694

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. AURELIO
CHENIQUE–PUEY, DEFENDANT–RESPONDENT.

Argued February 13, 1996—Decided July 17, 1996.

*Gary Schlyen*, Chief Assistant Prosecutor, argued the cause for appellant (*Ronald S. Fava*, Passaic County Prosecutor, attorney).

*Steven M. Gilson*, Designated Counsel, argued the cause for respondent (*Susan L. Reisner*, Public Defender, attorney).

*Lisa Sarnoff Gochman*, Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*Deborah T. Poritz*, Attorney General, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

The issue is whether charges of making terroristic threats to kill, contrary to *N.J.S.A.* 2C:12–3b, may be tried jointly with charges of contempt of a domestic-violence restraining order, contrary to *N.J.S.A.* 2C:25–29b(1). Defendant, Aurelio Chenique–Puey, was convicted of both offenses in a consolidated jury trial in the Law Division. In an unpublished opinion, the Appellate Division reversed, ruling that separate trials were required. We agree that joinder prejudiced the defendant on the threats charge but not on his contempt conviction. Accordingly, we affirm defendant's contempt conviction and remand for a new trial on the count concerning terroristic threats.

I

This case arises out of the turbulent relationship of defendant and Tina Lee. Although never married, the couple cohabited from 1983 until 1987. In 1986, they had a daughter. Because of incessant arguing and fighting, however, they separated in 1987.

According to Lee, defendant subsequently harassed her by banging on the door and windows of her home, and by both threatening to kill and cursing her. Defendant repeatedly warned Lee not to let him catch any men in her apartment.

In the fall of 1987, defendant obtained a court order granting visitation rights for his daughter. Then, Lee obtained a temporary domestic-violence restraining order, which was made permanent on December 1, 1987. The order prohibited defendant from "returning to the scene of the domestic violence" and "from having any contact with the plaintiff or harassing plaintiff or plaintiff's

relatives in any way." It also curtailed defendant's child-visitation rights.

Defendant was not present at the hearings that led to the issuance of the restraining orders. Lee did not notify defendant of those hearings because she was unaware of his current residence. Although she knew of his work address, she did not so inform the court.

Several days following the grant of the permanent order, defendant appeared outside of Lee's apartment and demanded entry. Lee informed him that she had obtained a restraining order against him and slipped his copy under the door.

A few days later, defendant called Lee to tell her that he was very upset by the contents of the order. He cursed Lee and threatened: "I'm going to get you for this."

Lee did not have any further contact with defendant until 1991. In the interim, defendant was convicted and imprisoned on unrelated charges. He was paroled on November 12, 1991.

Five days after his release from prison, on Sunday, November 17, 1991, defendant knocked on the door of Lee's apartment and demanded to see their daughter. At the time, Lee was watching a football game on television with two of her children and her boyfriend, Clifford McKnight. Lee refused to admit defendant and told him to leave. Defendant responded that he wanted to see his daughter.

Defendant proceeded to taunt McKnight through an open rear window. According to Lee and McKnight, defendant reached his arm through the window bars and waved a knife at them. After failing to provoke McKnight, defendant threatened to return to the apartment with a shotgun and kill the couple.

When defendant left the premises, Lee called the police and filed a criminal complaint against defendant. Defendant was indicted on charges of third degree terroristic threats, contrary to either *N.J.S.A.* 2C:12–3a or *N.J.S.A.* 2C:12–3b, or both; fourth degree unlawful possession of a weapon, a knife, contrary to

*N.J.S.A.* 2C:29–5d; and fourth degree contempt of a judicial restraining order, contrary to *N.J.S.A.* 2C:29–9b.

At the start of trial, defendant moved for a severance of the contempt charge. He argued that joinder of this offense would prejudice him because evidence of the restraining order would convince the jury that he had in fact made the alleged terroristic threats against Lee. The trial court denied the motion.

At trial, defendant did not testify. Instead, he produced two witnesses, Pedro and Marisa Moncho, who claimed that they had accompanied defendant to Lee's apartment on two prior occasions. First, on November 12, 1991, the three visited the apartment without incident. While there, defendant talked with Lee and measured his daughter for clothes.

The second occasion, which occurred on November 17, 1991, gave rise to the events that underlie the present charges. The Monchos' version differed sharply from Lee's version. According to the Monchos, they knocked on the door and heard a child inside, but no one answered. Through the open, rear window they looked inside the apartment. Lee told them that she would not let them in and that they should leave. According to Pedro Moncho, defendant then told Lee that he would return on another day and the two men left. The Monchos denied that Chenique–Puey had a knife or made any sort of threats to Lee and McKnight.

The jury accepted Lee's version and convicted defendant of the terroristic threats and contempt counts, but acquitted him of unlawful possession of a knife. The court sentenced defendant as a persistent offender to an extended term of seven years on the terroristic threats conviction and imposed a nine months concurrent sentence on the contempt conviction.

In reversing, the Appellate Division held that separate trials were required because evidence of the restraining order unfairly prejudiced defendant on the terroristic-threats count. We granted the State's petition for certification. 142 *N.J.* 514, 665 *A.*2d 1108 (1995).

## II

Domestic violence persists as a grave threat to the family, particularly to women and children. In the Prevention of Domestic Violence Act, the Legislature has made clear its intention to "assure the victims of domestic violence the maximum protection from abuse the law can provide." *N.J.S.A.* 2C:25–18. Recognizing the decisive role of the judiciary, the Legislature declared that "it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions." *Ibid.* Recently, this Court responded by declaring that "there is no such thing as an act of domestic violence that is not serious." *Brennan v. Orban,* 145 *N.J.* 282, 298, 678 *A.2d* 667 (1996).

■ As with most issues that confront the judiciary, however, the trial of a domestic violence case is multidimensional. Courts must balance the vigilant protection of a victim of domestic violence with the right of a defendant to a fair trial. The issue is whether, without unduly prejudicing the defendant's right to a fair trial, charges of contempt of a domestic-violence restraining order can be consolidated for trial with charges of making terroristic threats. Resolution of the issue requires a careful weighing of two competing values: the expeditious determination of a compelling issue with the protection of the rights of the accused.

## III

Joinder of offenses is governed generally by *Rule* 3:7–6 which provides in pertinent part:

> Two or more offenses may be charged in the same indictment or accusation in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan.

Mandatory joinder is required when multiple criminal offenses charged are "based on the same conduct or aris[e] from the same episode, if such offenses are known to the appropriate prosecuting

officer at the time of the commencement of the first trial and are within the jurisdiction and venue of a single court." *R.* 3:15–1(b).

■ Notwithstanding the preference for joinder, *Rule* 3:15–2(b) vests a trial court with discretion to order separate trials if joinder would prejudice unfairly a defendant. *State v. Oliver,* 133 *N.J.* 141, 150, 627 *A.*2d 144 (1993). The rule provides:

> If for any other reason it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses ... in an indictment or accusation the court may order an election or separate trials of counts ... or direct any other appropriate relief.

■ The decision whether to sever an indictment rests in the sound discretion of the trial court. *State v. Briley,* 53 *N.J.* 498, 503, 251 *A.*2d 442 (1969). An appellate court will defer to the trial court's decision, absent an abuse of discretion. *State v. Erazo,* 126 *N.J.* 112, 131, 594 *A.*2d 232 (1991); *State v. Brown,* 118 *N.J.* 595, 603, 573 *A.*2d 886 (1990).

■ Central to the inquiry is "whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [*N.J.R.E.* 404(b)] in the trial of the remaining charges." *State v. Pitts,* 116 *N.J.* 580, 601–02, 562 *A.*2d 1320 (1989). If the evidence would be admissible at both trials, then the trial court may consolidate the charges because "a defendant will not suffer any more prejudice in a joint trial than he would in separate trials." *State v. Coruzzi,* 189 *N.J.Super.* 273, 299, 460 *A.*2d 120 (App.Div.), *certif. denied,* 94 *N.J.* 531, 468 *A.*2d 185 (1983). The focus in this case, then, is whether evidence of the issuance of a domestic violence restraining order is properly admissible at both defendant's trials for contempt and terroristic threats to kill.

### IV

To convict a defendant of the fourth-degree crime of contempt of a restraining order issued pursuant to the Prevention of Domestic Violence Act ("the Act"), the State must prove: (1) a restraining order was issued under the Act; (2) the defendant's violation

of the order; (3) that defendant acted purposely or knowingly; and (4) the conduct that constituted the violation also constituted a crime or disorderly persons offense. *N.J.S.A.* 2C:29–9(b); G. Miller, 33 *New Jersey Practice, Criminal Law*, § 264 (West Supp.1996).

■ Accordingly, evidence of the domestic-violence restraining order was an essential element of the State's proofs on the contempt charge. Furthermore, evidence of defendant's past acts of violence against Lee were admitted properly to show that his attack was committed purposely and knowingly. *N.J.R.E.* 404(b); *see also State v. Ramseur*, 106 *N.J.* 123, 266–67, 524 *A.*2d 188 (1987) (evidence of arguments between defendant and victim over year and a half leading up to killing was properly admitted to show defendant's hostility toward victim and his jealousy about her contacts with other men). We find no error in defendant's conviction for contempt. Defendant's conviction for terroristic threats, however, is more problematic.

V

The crime of terroristic threats is defined in *N.J.S.A.* 2C:12–3b as follows:

A person is guilty of a crime of the third degree if he threatens to kill another with purpose to put him in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out.

■ At defendant's trial for terroristic threats to kill, his prior acts of domestic violence would be admissible for the limited purpose of demonstrating that Lee had reason to believe that he would make good on his threats to kill her and her companion. *N.J.R.E.* 404(b). Such evidence, however, is inadmissible to show that defendant "acted in conformity" with these prior bad acts. *N.J.R.E.* 404(a). The trial court should have given a charge on the limited purpose for which the prior-acts evidence was admitted. *State v. Cofield*, 127 *N.J.* 328, 341–42, 605 *A.*2d 230 (1992).

██ Evidence of the restraining order is inadmissible, however, to prove terroristic threats. Admission of the order could have prejudiced unduly defendant by bolstering the victim's testimony regarding defendant's prior bad acts. A jury could interpret the order as a judicial imprimatur on the victim's testimony. The order creates the inference that if a court found defendant guilty of domestic violence in a prior proceeding, that defendant is more likely guilty of the present terroristic-threat charges. In the present case, moreover, the restraining order is not merely cumulative evidence. *But see State v. Steed,* 140 *N.H.* 158, 665 *A.*2d 1072 (1995) (holding that evidence of domestic-violence restraining order was cumulative in case for criminal trespass). Accordingly, we hold that the trial court should have severed the charge on terroristic threats to kill from the trial of the contempt of the domestic violence restraining order.

## VI

██ In the future, trial courts should sever and try sequentially charges of contempt of a domestic-violence restraining order and of an underlying criminal offense when the charges arise from the same criminal episode. *See State v. Ragland,* 105 *N.J.* 189, 519 *A.*2d 1361 (1986).

██ First, the court should try the charge on the underlying offense. Evidence of a previously-issued domestic violence restraining order generally will be inadmissible in that trial. If, however, the defendant testifies, the order would be admissible for the limited purpose of impeaching the defendant's testimony. Following a verdict on the underlying offense, the trial court should immediately proceed to try the contempt charge before the same jury. In that trial the jury may consider the evidence presented in the trial of the underlying offense. *Id.* at 195–96, 519 *A.*2d 1361. We anticipate that the inconvenience to the victim of separate proceedings before the same jury will be slight and that preserving a defendant's right to a fair trial outweighs that slight inconvenience.

## VII

Contrary to the concerns of the Attorney General, severing the contempt and terroristic-threat counts should not create a double-jeopardy problem. A defendant who moves to sever the trial of a charge of contempt of a domestic violence restraining order from the trial of an underlying offense should be precluded from then asserting double-jeopardy or collateral estoppel bars to the subsequent prosecution. *Jeffers v. United States*, 432 *U.S.* 137, 152, 97 *S.Ct.* 2207, 2217, 53 *L.Ed.*2d 168, 181 (1977); *State v. Catanoso*, 269 *N.J.Super.* 246, 274, 635 *A.2d* 512 (App.Div.), *certif. denied*, 134 *N.J.* 563, 636 *A.2d* 521 (1993).

Double jeopardy concerns would arise only if the State sought to try the offenses separately. Because that is not the case here, we do not address this issue.

## VIII

The trial court erred by denying defendant's motion to sever his indictment for contempt of a domestic-violence restraining order and terroristic threats to kill. Evidence of a restraining order obtained by victim against defendant, although necessary for the contempt prosecution, unduly prejudiced defendant's trial on terroristic threats. Insofar as the judgment of contempt is concerned, we reverse the Appellate Division and reinstate the judgment of conviction. We affirm the judgment of the Appellate Division vacating the conviction for terroristic threats to kill and remand to the Law Division.

*For reversal and reinstatement in part; affirmance and remandment in part*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.