**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1688-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMES R. STEWART,

     Defendant-Appellant.

_____

Submitted April 21, 2021 – Decided May 19, 2021

Before Judges Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 14-04-0872.

Joseph E. Krakora, Public Defender, attorney for appellant (Al Glimis, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Debra G. Simms, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant James R. Stewart appeals from an order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. He argues the PCR court erred by rejecting his claims that his trial counsel was ineffective by failing to show him, prior to trial, a video recording allegedly depicting him committing the first of two robberies charged in the indictment, and his appellate counsel was ineffective by failing to challenge the court's denial of his motion to sever the robbery charges for trial. He also argues the PCR court erred by denying the petition without an evidentiary hearing. Unpersuaded by defendant's arguments, we affirm.

I.

A grand jury returned an indictment charging defendant with two counts of first-degree robbery, N.J.S.A. 2C:15-1. The charges arose out of two alleged robberies occurring minutes apart. It was alleged defendant first robbed a convenience store and then a gas station by threatening the victims in each with immediate bodily injury or by placing them in fear of immediate bodily injury while defendant was armed with, or threatened the immediate use of, a deadly weapon.

Prior to trial, defendant's counsel made an oral motion to sever the robbery charges for trial. Counsel asserted the charged robberies involved "two different

victims on the same date," and defendant would suffer prejudice if the robberies were tried together. The State argued evidence concerning each robbery proved defendant's identity as the perpetrator of the other robbery, and also established defendant's "common scheme or plan to rob."

In response to the arguments of counsel, the court stated it would rule on defendant's motion at "the next pretrial conference." At a subsequent proceeding, the court noted it "reviewed the discovery provided by the State to the defense . . . and determined that joinder of the two robberies . . . [was] appropriate given the commonality of the proofs." The court explained the discovery materials revealed the victim of the alleged robbery of the store identified defendant to the police after observing defendant at the gas station where the second robbery occurred. The court further noted defendant told the police he did not intend to rob, but instead "was there to get money . . . to go home." The court denied the severance motion, finding the evidence of the separate offenses was material to defendant's state of mind and defendant's identity, which the State "must prove beyond a reasonable doubt." The trial court therefore denied the severance motion.

The matter was tried before a jury. In our opinion on defendant's direct appeal from his convictions by the jury, we summarized the trial evidence. State

3

v. Stewart, No. A-4991-14 (App. Div. Dec. 13, 2016) (slip op. at 2-13). We briefly restate the trial evidence pertinent to defendant's PCR petition.

The owner of an Atlantic City convenience store testified that sometime after 8:00 p.m. on January 31, 2014, defendant walked into the store wearing "normal clothes" with "a towel pulled up around his face, [and] a cap on his head." Id. at 2. Defendant kept one hand in his pocket. Ibid.

Defendant asked the owner for cigarettes, and then demanded "everything in the register." Id. at 2-3. The owner repeated a few times his request that defendant pay for the cigarettes, and, in response to each request, defendant demanded everything in the register. Id. at 3. Defendant then left the store "empty handed." Ibid.

The store owner could not recall if "defendant made any motion with the hand he kept in his pocket," but the owner "believed defendant was armed." Ibid. The owner explained the store had been robbed "many times before," and he understood that when someone has his or her hands in a pocket and demands cash, "he [or she] is trying to rob you." Ibid. The owner testified he instructed his employees not to argue with someone who demands money, and to "just give the money and try to save your life," but he did not follow that procedure when defendant demanded "everything in the register" because he decided to take a

4

A-1688-19

chance with defendant. Ibid. The store owner did not call the police after defendant left the store because "nothing happened," and he did not want to wait for the police because "his shift was ending, and he wanted to go home." Id. at 4.

Shortly before 9:00 p.m. on January 31, 2014, at a gas station located "a couple of blocks" from the convenience store, a station attendant sat in a glass booth. Ibid. Defendant pushed open the booth's door and, with "his hand in his pocket 'like [he had] a gun[,]' . . . shouted, 'Motherfucker, if you don't give me the money, I'm going to kill you right now.'" Ibid. (first alteration in original). The attendant testified he told defendant he was by himself, he did not have any money, and the money was in the safe. Ibid. When defendant pushed past the attendant "to get to the safe, the attendant grabbed a" piece of wood and hit defendant with it. Id. at 4-5.

Defendant "went down from the blows," and the attendant ran from the booth "and pushed the [wood] through the door handle 'to jam the door so that [defendant] wouldn't come out.'" Id. at 5. The attendant stood along the wall between the window and door of the booth because he feared defendant "might shoot out." Ibid. The attendant yelled for someone to call the police. Ibid. The attendant could not recall the clothes defendant wore, but he explained defendant

A-1688-19

had a white towel that "covered [defendant's] face except for his eyes." Ibid. The police responded to the gas station and apprehended defendant "where he had been trapped by the attendant." Ibid.

The convenience store owner, while on his way home after his shift ended, drove past the gas station, "saw the lights of the police cruisers," and also saw defendant with the white towel "in the booth." Ibid. The store "owner pulled up to a police officer and reported that defendant had just tried to rob him at his store." Ibid. The officer asked the owner if the store had surveillance cameras. Ibid. The owner responded in the affirmative, and he and police officers went to the store to review the surveillance recordings. Ibid. At trial, the store owner identified a video recording, as well as photographs from the recording, depicting the incident with defendant at the store.[1] Id. at 5-6.

Defendant testified he took a train to Atlantic City on January 31, 2014 and lost his money gambling at a casino. Id. at 6. He did not have money to purchase a train ticket to return home and did not want to call his mother at 8:00 p.m. and ask that she "come and get him." Ibid.

Defendant explained "he was not dressed for the weather," and he thought he might have to sleep in the train station. Ibid. He asked a casino worker for

---

[1] The recording did not include audio.

A-1688-19

a blanket and was given a towel that "he wrapped around his neck and face for warmth." Ibid. According to defendant, he asked people for change and received some money, ibid., but he did not feel safe "[s]o he decided to 'go to a place that[] [was] well lit with cameras to ask individuals for money,'" id. at 6-7. Defendant testified he did not intend to injure or rob anyone, but instead simply "look[ed] for some change to get home." Id. at 7.

Defendant admitted going into the convenience store "and ask[ing] the man at the counter for money to get home." Ibid. Defendant testified the man "said no," so he left the store "within forty-five seconds." Ibid. Defendant denied asking for cigarettes and demanding money. Ibid. He admitted a photograph in evidence at trial "show[ed] him in the store with a hat and the towel around his face," but he claimed he was sneezing. Ibid.

Defendant also testified he did not say anything to the gas station attendant after entering the booth. Ibid. He explained that when he entered the booth, the attendant yelled at him to get out. Ibid. Defendant stated that when he turned to leave the booth, the attendant began to yell and hit him with a stick. Ibid. Defendant said he did not know "why the attendant was screaming," he had not done anything wrong, and he sat in the booth "to await the police [because] the attendant ran outside and barred the door." Ibid.

A-1688-19

The jury convicted defendant of first-degree robbery of the gas station and the lesser-included offense of second-degree robbery of the convenience store. Id. at 7-8. On the direct appeal, we affirmed the first-degree robbery conviction. Id. at 16. We reversed defendant's conviction for second-degree robbery of the store because the trial court failed to charge the jury on the lesser-included offense of attempted theft, N.J.S.A. 2C:20-3 and N.J.S.A. 2C:5-1. Ibid. Following our remand for a new trial on the second-degree robbery offense, ibid., the State dismissed the charge. The Supreme Court denied defendant's petition for certification. State v. Stewart, 230 N.J. 518 (2017).

Defendant filed a pro se PCR petition claiming his trial counsel was ineffective by failing to show him, prior to trial, the video recording of the incident at the store. Defendant further alleged his appellate counsel was ineffective by failing to argue the trial court erred by denying trial counsel's motion to sever the two robbery charges.[2]

---

[2] Defendant made other arguments before the PCR court, including claims that trial counsel was ineffective by failing to object to the admission of the video recording in evidence and appellate counsel was ineffective by making only one argument on defendant's direct appeal. We address only the arguments the PCR court rejected that defendant directly challenges on appeal. See generally Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining an issue not briefed on appeal is deemed waived); Liebling v. Garden State Indem., 337 N.J. Super. 447, 465-66 (App. Div. 2001) (same).

Following oral argument on defendant's PCR petition, the court issued a written statement of reasons supporting its denial of the petition without an evidentiary hearing. The PCR court found defendant failed to demonstrate appellate counsel's performance was deficient by not arguing the trial court erred by denying defendant's severance motion. The PCR court found appellate counsel had no obligation to make a meritless argument and defendant failed to demonstrate a challenge to the denial would have been successful. The PCR court noted defendant failed to demonstrate the trial court abused its discretion by denying the severance motion because the evidence concerning the two robberies was admissible to establish defendant's common plan or scheme, and intent. The PCR court also found defendant failed to demonstrate he was prejudiced at trial by joinder of the two offenses or that he was prejudiced by appellate counsel's alleged error.

The PCR court further determined defendant failed to establish a prima facie case his trial counsel was ineffective by failing to show him the video recording of the incident at the convenience store prior to trial. In part, the PCR court rejected defendant's claim, finding it was supported solely by his verified petition and lacked corroboration through a "certification from any other party with information corroborating his version of [the] events." The PCR court also

9

rejected the claim because defendant failed to present any evidence that the result of the proceedings against him would have been different if he had been shown the recording prior to trial,.

The court entered an order denying the PCR petition. This appeal followed. Defendant offers the following arguments for our consideration:

POINT I

THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR [PCR] WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO ASCERTAIN THE MERITS OF HIS CONTENTION THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AND THAT THE DENIAL MATERIALLY CONTRIBUTED TO HIS CONVICTION.

A. The Prevailing Legal Principles Regarding Claims of Ineffective Assistance of Counsel, Evidentiary Hearings[,] and Petitions for [PCR].

B. The PCR Court Erred in Rejecting Defendant's Argument that Appellate Counsel Rendered Ineffective Legal Representation by Virtue of [Counsel's] Failure to Appeal the Trial Court's Denial of Defendant's Motion to Sever the Counts of the Indictment for Trial.

C. The PCR Court Erred in Rejecting Defendant's Claim that he was Denied the Effective Assistance of Counsel when Trial Counsel Failed to Review the Video Evidence with him. Defendant Proved a Prima Facie case of Ineffective Assistance of Counsel and was Entitled to an Evidentiary Hearing to Further Develop a Record.

II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420. Where an evidentiary hearing has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421. We apply that standard here.

We consider defendant's ineffective assistance of counsel claims under the two-prong standard established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Under the first prong, a defendant "must show . . . counsel's performance was deficient." Strickland, 466 U.S. at 687. It must be demonstrated that counsel's handling of the matter "fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88.

Under the second prong of the Strickland standard, a "defendant must show that the deficient performance prejudiced the defense." Id. at 687. There

11

must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A defendant must demonstrate "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "The error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694).

"With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012) (first citing State v. Echols, 199 N.J. 344, 357 (2009); and then citing State v. Goodwin, 173 N.J. 583, 593 (2002)). A failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition. Strickland, 466 U.S. at 700; State v. Nash, 212 N.J. 518, 542 (2013); Fritz, 105 N.J. at 52.

## A.

We first consider defendant's claim his trial counsel erred by failing to review with him, prior to trial, the video recording of the incident at the convenience store. He argues "[a] reasonably competent attorney would have

provided [him] with this essential discovery and gone over its significance in the State's case," and his pretrial review of the recording "was essential for [him] to knowingly and intelligently decide whether to accept a plea offer or to testify at trial." We are not persuaded.

In the first instance, we agree the PCR court erred by finding defendant's verified petition alone was insufficient to present the facts supporting his claim. PCR petitions must be "accompanied by an affidavit or certification by defendant, or by others, setting forth with particularity," State v. Jones, 219 N.J. 298, 312 (2014), "facts sufficient to demonstrate counsel's alleged substandard performance," ibid. (quoting State v. Porter, 216 N.J. 343, 355 (2013)). There is no requirement, however, that the facts set forth in a defendant's properly verified petition must also be supported by corroborating evidence, including certifications or affidavits from others, to make a prima facie showing of the facts supporting a request for PCR. The PCR court erred by finding otherwise.

Nonetheless, we affirm the court's rejection of defendant's claim his counsel's performance was deficient because counsel failed to review the video recording with him prior to trial. That is because even viewing, as we must, the facts asserted in the verified petition "in the light most favorable

13

to . . . defendant," State v. Preciose, 129 N.J. 451, 462-63 (1992), defendant failed to establish a prima case of ineffective assistance of his trial counsel.

"Although a demonstration of prejudice constitutes the second part of the Strickland analysis," a court has "leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." Gaitan, 209 N.J. at 350. Here, defendant's verified petition is bereft of any facts establishing that but for his trial counsel's alleged error, the result of the criminal proceeding against him would have been different. See Strickland, 466 U.S. at 694 (explaining the prejudice prong of the ineffective assistance of counsel claim standard).

Defendant's petition generally asserts only that he could have chosen "not to go to trial after seeing the video evidence prior to trial."[3] Defendant failed to

---

[3] In his brief on appeal, defendant claims that had he reviewed the video recording prior to trial, he may have accepted the State's plea offer or decided not to testify at trial. The assertion does not support a prima facie claim of ineffective assistance of counsel because it is not set forth in an affidavit or certification and is not otherwise established by competent evidence. Jones, 219 N.J. at 312. The arguments of counsel in a brief do not establish facts supporting a claim for relief from a court. See Baldyga v. Oldman, 261 N.J. Super. 259, 265 (App. Div. 1993) ("The comments following [Rule 1:6-6] illustrate that its purpose is to . . . eliminate the presentation of facts which are not of record by unsworn statement of counsel made in briefs and oral arguments."); see also

sustain his burden of establishing prejudice, however, because he did not present any evidence concerning the State's plea offers, if any, or the extant circumstances when he considered them. His bald assertion about what could have happened is insufficient to support a prima facie claim of ineffective assistance of counsel. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (explaining "bald assertions" are insufficient to sustain a defendant's burden of establishing a prima facie case of ineffective assistance of counsel under the Strickland standard).

He also argues his counsel's failure to review the recording with him prior to trial deprived him of the opportunity to make an intelligent decision regarding whether to testify at trial, but the claim is undermined by the record. Defendant did not make a commitment to the court or jury about testifying at any time prior to the playing of the video during the State's case at trial. Defendant made the decision to testify only after the recording was played during the State's case. In other words, defendant was fully aware of the recording and its contents prior to making his decision to testify at trial.

---

Porter, 216 N.J. at 353 (stating facts asserted in support of a PCR petition must be "supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification" (emphasis added) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999))).

15                                                                  A-1688-19

Accordingly, even if trial counsel failed to review the video recording with defendant prior to trial, and that failure constituted deficient performance under the first prong of the <u>Strickland</u> standard, defendant failed to establish a prima facie case of ineffective assistance of counsel because he did not demonstrate he suffered prejudice under <u>Strickland</u>'s second prong. Defendant presented no evidence that but for his counsel's alleged error, there is a reasonable probability the result of his trial would have been different. <u>See</u> <u>Strickland</u>, 466 U.S. at 694. Defendant's failure to present evidence satisfying <u>Strickland</u>'s second prong required the denial of his PCR claim his counsel was ineffective by failing to review the video recording with defendant prior to trial.[4] <u>Id.</u> at 700; <u>Nash</u>, 212 N.J. at 542; <u>Fritz</u>, 105 N.J. at 52.

B.

Defendant also claims appellate counsel was ineffective by failing to argue on direct appeal the trial court erred by denying his severance motion. A defendant is entitled to the effective assistance of appellate counsel, and the <u>Strickland</u> standard applies to a PCR claim of ineffective assistance of appellate

---

[4] Our determination defendant failed to satisfy his burden of establishing <u>Strickland</u>'s second prong renders it unnecessary to decide whether defendant presented sufficient evidence demonstrating trial counsel's performance was deficient under <u>Strickland</u>'s first prong. <u>See</u> <u>Gaitan</u>, 209 N.J. at 350.

counsel. State v. O'Neil, 219 N.J. 598, 610-11 (2014). Thus, defendant was obliged to present evidence his appellate counsel's performance "fell below an objective standard of reasonableness," id. at 615 (quoting Strickland, 466 U.S. at 688), and that but for counsel alleged errors, there is "a reasonable probability" that the outcome of the appeal would have been different, id. at 611, 617 (quoting Strickland, 466 U.S. at 694).

In order to prevail on his claim appellate counsel was ineffective, defendant was required to demonstrate his argument the trial court erred by denying his severance motion would have been successful on his direct appeal. That is because an attorney is not ineffective by failing to make an argument that lacks merit or would be unsuccessful. State v O'Neal, 190 N.J. 601, 619 (2007); State v. Worlock, 117 N.J. 596, 625 (1990).

Based on our review of the record, we are convinced defendant failed to demonstrate that his claim the court erred by denying the severance motion either had merit or would have been successful on direct appeal. To obtain a reversal of the trial court's determination, defendant was obliged to demonstrate the trial court abused its discretion by denying the motion. See State v. Sterling, 215 N.J. 65, 73 (2013) (explaining a denial of a severance motion will be reversed only for an abuse of discretion); State v. Chenique-Puey, 145 N.J. 334,

A-1688-19

341 (1996) (same). Defendant makes no showing the trial court abused its discretion here.

The State may properly join charges in an indictment "if the offenses charged are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan." R. 3:7-6. Relief from a joinder of charges may be granted in the trial court's discretion "if a party is prejudiced by their joinder." State v. Oliver, 133 N.J. 141, 150 (1993).

A reviewing court considers a trial court's decision permitting two or more offenses to be tried simultaneously to "assess whether prejudice is present." Sterling, 215 N.J. at 73. "The test for assessing prejudice is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges.'" Ibid. (alteration in original) (quoting Chenique-Puey, 145 N.J. at 341). "[T]he evidence of other crimes or bad acts must be 'relevant to prove a fact genuinely in dispute and the evidence is necessary as proof of the disputed issue.'" Ibid. (quoting State v. Darby, 174 N.J. 509, 518 (2002)). To be admissible, the evidence must satisfy the requirements of N.J.R.E. 404(b). Ibid.;

see also State v. Cofield, 127 N.J. 328, 338 (1992) (establishing the four-part standard for admissibility of N.J.R.E. 404(b) evidence).

Before the PCR court and on appeal, defendant argues only that his appellate counsel should have challenged the denial of his severance motion because the trial court erred by finding that evidence about each of the alleged robberies would be admissible to establish defendant's identity in the trial on the other offense. As the PCR court correctly found, however, the State argued before the trial court that evidence concerning each alleged robbery was admissible for other reasons other than establishing defendant's identity, including to demonstrate defendant had "a common plan or scheme" and his intent.

Although not expressly addressed by the trial court, we agree the severance motion was properly denied because the evidence established the two incidents occurred in very close temporal and physical proximity and revealed "a common scheme or plan [that] embodies the commission of two or more crimes so related that proof of one tends to establish the other." State v. Lumumba, 253 N.J. Super. 375, 387 (App. Div. 1992); see also State v. Hardison, 204 N.J. Super. 1, 10 (App. Div. 1983) (upholding joinder of two separate robberies on the same night because "the record include[d] evidence of

a 'common scheme or plan' rather than separate and unrelated events"). Indeed, although defendant testified he did not intend to rob either the store owner or station attendant, he admitted his actions in both instances were part of a common scheme or plan to obtain money.

Defendant argues the trial court erred by finding the evidence concerning the separate robberies was material to the issue of defendant's identity. He claims his identity was not a material issue at trial because he admitted to the police he was present, he was apprehended after being locked in the booth at the gas station, and he did not dispute he was present at the convenience store.

We agree with the trial court that the State had the burden of proving beyond a reasonable doubt defendant was the individual who committed the separate robberies charged in the indictment. See State v. Henderson, 433 N.J. Super. 94, 108 (App. Div. 2013) (noting "the State's burden of proving at trial the identity of the accused as the person who committed the charged offense beyond a reasonable doubt"); see also Model Jury Charges (Criminal), "Robbery in the First Degree (N.J.S.A. 2C:15-1)" (rev. Sept. 10, 2012) (explaining in part the State has the burden of proving beyond a reasonable doubt the defendant committed each of the elements of the crime of first-degree robbery to convict the defendant of the offense). Thus, defendant's identity was a material issue at

trial and proof of defendant's identity was essential to the State's satisfaction of its burden of proving one of the essential elements of the crimes charged beyond a reasonable doubt.

We reject defendant's claim proof of his identity as the perpetrator of the two crimes charged in the indictment was not a material issue because he did not dispute he was present during the alleged robberies. Defendant's pretrial motion for severance was unaccompanied by any concession he was properly identified as the individual who allegedly committed the two charged robberies. He properly left the State to its burden of proving his identity as the perpetrator of each offense beyond a reasonable doubt. It was only after the State presented its evidence at trial that he conceded during his testimony he was the individual in the store who interacted with its owner and that he was later at the gas station. Thus, at the time the severance motion was made and decided, defendant had not conceded he was the individual who was involved in the incidents and, even if he had, a jury is not bound to accept a defendant's concession as to any fact, and the State at all times had the burden of proving defendant was the person who committed the charged offenses.

Moreover, the evidence concerning defendant's participation in each separate offense was admissible to establish his identity in the other offense.

21

See Sterling, 215 N.J. at 73.  Defendant wore the same clothing during each incident, and the evidence otherwise showed they occurred minutes apart and in close physical proximity to the other.  Our Supreme Court has observed that "[o]ther-crimes evidence may . . . be admitted on the issue of identity when a particular weapon or disguise used in one crime connects a defendant to another offense."  Id. at 93.  Here, defendant wore identical clothing, including the distinctive white towel he used to cover all of his face except his eyes, during both incidents.  In defendant's verified petition, he acknowledged his clothing established his identity as the individual involved in both of the alleged crimes; defendant stated the "clothes he was wearing" "tie[d him] to both alleged robberies."  In other words, in his sworn statement supporting his PCR petition, defendant admits the clothes he wore during each alleged robbery established his identity as the perpetrator of the other.[5]

---

[5]  We reject defendant's argument the similarity in his clothing was inadequate to establish his identity because the evidence did not satisfy the standard for demonstrating identity based on the commission of "signature crimes."  There is a stringent standard for admitting other-crimes evidence to prove identity where "the State attempts to link a particular defendant to a crime on the basis of modus operandi, or a signature way of committing the crime."  Sterling, 215 N.J. at 93; see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 14 on N.J.R.E. 404(b) (2020).  A more stringent standard is required "[b]ecause of the great hazard of prejudice" when other-crimes evidence is presented, "particularly where the venture is to prove identity."  State v. Reldan, 185 N.J. Super. 494, 502

Additionally, evidence concerning both offenses was admissible to establish defendant's common plan and scheme, and, more importantly, his intent. As noted by the trial court, defendant offered a statement to the police, which he reprised at trial, that he wore the towel to keep warm and he did not intend to commit any robberies, but instead innocently requested money to obtain train fare to return home. The evidence of defendant's actions, first at the store and then the gas station, demonstrate a contrary scheme, plan, and intent. The evidence showed that in both instances defendant entered structures, where he was protected from the elements, wearing a disguise—a white towel wrapped around his face to obscure his identity—with at least one hand obscured in a pocket, and demanded—not requested—money that was not his. As the motion court found, those actions established a common and ongoing scheme reflecting an intent to rob the victims. The evidence was material because it went to the core of the issues presented at trial—defendant's intent—and it contradicted

_____

(App. Div. 1982). Defendant's reliance on the standard for admissibility of signature-crimes evidence is misplaced. The State did not argue, and the trial court did not find, the evidence concerning defendant's clothing constituted evidence of signature crimes, and there is no claim there was a signature modus operandi supporting defendant's identity as the perpetrator of the two alleged robberies. Here, the mere fact that defendant was seen wearing identical clothing—including the distinctive white towel mask—at two nearby locations minutes apart is sufficient to demonstrate his identity as the individual at each alleged robbery.

23

defendant's self-serving statement to the police and his self-serving testimony at trial.

We are convinced that, contrary to defendant's claim, the evidence concerning each separate incident was admissible to address material issues relevant to establishing defendant's guilt on the separate robberies charged in the indictment. In addition, he suffered no undue prejudice from the introduction of the evidence at the joint trial on the separately charged robberies. Since the evidence as to each incident would have been admissible in separate trials on each of the charged offenses, the charges were properly consolidated and defendant did "not suffer any more prejudice in a joint trial than he would in separate trials.'" Chenique-Puey, 145 N.J. at 341 (quoting State v. Coruzzi, 189 N.J. Super. 273, 299 (App. Div. 1983)).

Defendant's ineffective assistance of counsel claim against his appellate counsel fails because defendant did not sustain his burden of establishing counsel failed to make a meritorious argument on his direct appeal. See O'Neal, 190 N.J. at 619. The claim further fails because defendant did not present evidence satisfying his burden under Strickland's second prong. That is, defendant makes no showing that but for his appellate counsel's alleged error,

A-1688-19

there is a reasonable probability the result of his appeal would have been different.  See Strickland, 466 U.S. at 694.

C.

We find no merit to defendant's argument the court erred by rejecting his PCR claims without an evidentiary hearing.  A defendant is entitled to an evidentiary hearing only when he or she "has presented a prima facie [claim] in support of [PCR]."  State v. Marshall, 148 N.J. 89, 158 (1997) (quoting Preciose, 129 N.J. at 462).  "To establish a prima facie claim of ineffective assistance of counsel, a defendant must demonstrate the reasonable likelihood of succeeding under the" Strickland standard.  Preciose, 129 N.J. at 463.  As we have explained, defendant failed to establish a prima facie case of ineffective assistance of his trial and appellate counsel.  The court therefore correctly denied his request for an evidentiary hearing.  Id. at 462-63.

To the extent we have not directly addressed any arguments made on defendant's behalf, we find the arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1688-19