**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0462-16T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ALCHANE MAYES, a/k/a
HASSAN SMITH, ALCHANE
RAHEEN, and ALCHANE
RAHEEN MAYES,

      Defendant-Appellant.

_____

Argued October 29, 2018 – Decided November 7, 2018

Before Judges Sabatino and Haas.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-05-1256.

Molly O'Donnell Meng, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Molly O'Donnell Meng, of counsel and on the brief).

Tiffany M. Russo, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore Stephens, II, Acting Essex

County Prosecutor, attorney; Tiffany M. Russo, of counsel and on the brief).

PER CURIAM

An Essex County grand jury charged defendant Alchane Mayes and his co-defendant, Jeshon Johnson with second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-1, N.J.S.A. 2C:25-1(b) (count one); four counts of first-degree robbery, N.J.S.A. 2C:15-1 (counts two, seven, eleven, and fourteen); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count three); first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2) (count four); four counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (counts five, nine, twelve, and fifteen); four counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (counts six, ten, thirteen, and sixteen); and first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1) (count eight).[1]

Johnson confessed to these crimes, implicated defendant, and agreed to testify at defendant's trial. As a result, defendant and Johnson were granted

---

[1] The named victim in the offenses charged in counts one through six of the indictment was R.G. (We refer to the victims and one of the witnesses by initials). Counts seven through ten involved the robbery of B.E.; the robbery victim in counts eleven through thirteen was T.S.; and E.M. was the robbery victim in counts thirteen through sixteen.

separate trials.[2]   On February 29, 2016, the motion judge[3]   rendered a comprehensive written opinion denying defendant's motion to sever counts one through six from counts seven through sixteen.

Following a multi-day trial, the jury convicted defendant of counts seven through sixteen involving the robberies of B.E., T.S., and E.M..   The jury acquitted defendant of counts one through six involving the robbery and murder of R.G.  After making appropriate mergers, the trial judge sentenced defendant to consecutive fifteen-year terms on the three robbery charges (counts seven, eleven, and fourteen), subject to NERA, with five years of parole supervision upon release.  The judge sentenced defendant on count eight to a concurrent ten-year term, subject to NERA and a three-year period of parole supervision; and imposed concurrent eight-year terms subject to four years of parole ineligibility

---

[2]   Johnson later pled guilty to an amended charge of first-degree aggravated manslaughter (count four); conspiracy to commit robbery (count one); three counts of robbery (counts two, seven, and eleven); and one count of unlawful possession of a handgun (count five).  After merging count one into count two, a judge, who was not involved in any way in defendant's trial, sentenced Johnson to concurrent twenty-year terms, subject to the 85% parole ineligibility provisions of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on counts two, four, seven, and eleven; and to a consecutive eight-year term on count five. Thus, Johnson received an aggregate term of twenty-eight years, subject to NERA.

[3]  Different judges handled the motion for severance (the motion judge) and the trial (the trial judge).

on counts nine, twelve, and fifteen. Thus, defendant's aggregate sentence was forty-five years, subject to NERA. This appeal followed.

On appeal, defendant raises the following contentions:

POINT I

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO SEVER THE ROBBERY CHARGES FROM THE HOMICIDE.

POINT II

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL AFTER THE STATE CONCEDED ERROR IN ADMITTING A BULLET INTO EVIDENCE THAT HAD NOTHING TO DO WITH THIS CASE.

POINT III

IN THE ALTERNATIVE, THIS COURT SHOULD REDUCE DEFENDANT'S SENTENCE OR REMAND THE MATTER FOR RESENTENCING.

A.    Defendant's Forty-Five-Year Sentence Is Disparate With The Twenty-Year Sentence Imposed On His Codefendant, And Should Be Reduced.

B.    The Trial Court Erred By Imposing Consecutive Sentences For A Single Robbery With Two Victims.

C.    The Trial Court Erred By Failing To Consider Defendant's Youth As A Mitigating Factor (Not raised below).

4

After reviewing the record in light of these contentions and the applicable law, we affirm.

I.

Shortly before 3:00 p.m. on July 6, 2012, three men stopped B.E. as he walked down the street. One of the men brandished a large gun, and told B.E. it was a "Desert Eagle." Another man went through B.E.'s pockets, and took his cash, cell phone, and debit card. After robbing B.E., the men forced him to accompany them to several ATMS, where they withdrew money. The men then ordered B.E. to run away. B.E. contacted the police and gave a description of the men, stating they were wearing t-shirts, shorts, and fisherman's hats. B.E. later identified two of the men in a photo array as defendant and Johnson, and stated that Johnson was the man who carried the Desert Eagle gun.

About twelve hours later, at 2:50 a.m. on July 7, two men approached E.M. and T.S. as they walked down the street. The two men were carrying handguns and robbed the victims of their cell phones and wallets. One of the men was wearing a fisherman's hat. The men tried to force E.M. and T.S. to walk with them, but E.M. was able to convince them otherwise. The men then told the victims to run away. T.S. later identified defendant and Johnson as the robbers after reviewing a photo array.

A-0462-16T2

Less than an hour later, R.G. picked up two men in his cab. He was later found shot to death in the vehicle. The police obtained surveillance video from the area that showed two men matching defendant and Johnson's descriptions getting into the cab. The police were later able to match finger and palm prints found in the cab to Johnson. The medical examiner testified that R.G. had been shot twice, and that either of the wounds would have been fatal.

Johnson's cousin, V.P., spoke to the police about the shooting. V.P. stated that Johnson and defendant came to his house in a panic and said they had "fucked up" and "caught a body," which V.P. understood to mean they had killed someone. Defendant and Johnson had three guns in a duffel bag, which they showed V.P.. He took a picture of the guns, which he later deleted from his cell phone. However, the police were able to recover the photo pursuant to a search warrant, and it showed the larger Desert Eagle gun, and two smaller handguns.

The police arrested Johnson, who admitted his and defendant's roles in each of the incidents. Johnson said that defendant got into an argument with R.G. over the cost of the fare. Both men then attempted to shoot into the cab, but Johnson claimed his gun jammed and that defendant killed the victim. Johnson told the police he owned the Desert Eagle gun and one of the smaller handguns. He stated the other handgun belonged to defendant. At trial, Johnson

A-0462-16T2

testified that he and defendant robbed B.E. during the afternoon on July 6, and robbed "some more people" around 2:40 a.m. on July 7. He reiterated the information he provided to the police with regard to R.G.'s murder.

During a search of Johnson's residence, the police found a fisherman's hat, multiple cell phones, the Desert Eagle gun, and a pair of shorts matching the robbery victims' descriptions. After the police arrested defendant, they were not able to recover any relevant evidence following a search of his home. However, after the police told him of the charges, defendant blurted out, "I was in the cab. I had to take two steps forward in order to shoot . . . the cab driver."

## II.

In Point I, defendant contends the trial court erred in denying his motion to sever the counts of the indictment related to the shooting of R.G. (counts one to six) from the counts concerning the three earlier robberies of B.E., E.M., and T.S. (counts seven to sixteen). He alleges the shooting was in no way related to the first three robberies and, therefore, separate trials should have been held. We disagree.

Generally, in deciding a motion for severance, the trial court enjoys "a wide range of discretion[.]" State v. Coruzzi, 189 N.J. Super. 273, 297 (App.

Div. 1983). A denial of a motion for severance should not be reversed "absent a mistaken exercise of that discretion." Ibid.

"[W]here the evidence establishes that multiple offenses are linked as part of the same transaction or series of transactions, a court should grant a motion for severance only when [a] defendant has satisfied the court that prejudice would result." State v. Moore, 113 N.J. 239, 273 (1988). The courts have recognized that any trial involving several charges "probably will involve some potential of [prejudice], since the multiplicity alone may suggest to the jury a propensity to criminal conduct." Coruzzi, 189 N.J. Super. at 297. However, "other considerations, such as economy and judicial expediency, must be weighed" when deciding a severance motion. Ibid. These interests may require that charges remain joined, "so long as the defendant's right to a fair trial remains unprejudiced." Id. at 298.

The proper inquiry when deciding a motion for severance is whether, if the crimes were tried separately, evidence of the severed offenses would be admissible at the trial of the remaining charges. State v. Chenique-Puey, 145 N.J. 334, 341 (1996). If the evidence would be admissible at both trials, the trial court should not sever the charges, because the defendant "will not suffer any more prejudice in a joint trial than he would in separate trials." Coruzzi, 189

N.J. Super. at 299. To evaluate whether evidence of each crime would be admissible at the trial of the others, and thus whether severance should be denied, the trial court must utilize the same standard used to determine whether other-crime evidence is admissible under N.J.R.E. 404(b). Chenique-Puey, 145 N.J. at 341.

The Supreme Court's opinion in State v. Cofield, 127 N.J. 328, 338 (1992), sets forth the well-established test for deciding whether evidence is admissible under this rule:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;[4]
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [(quoting Abraham P. Ordover, Balancing the Presumption of Guilt and Innocence: Rules 404(b), 608(b), and 609(a), 38 Emory L.J. 135, 160 (1989)).]

---

[4] In subsequent case law, the Supreme Court has indicated this second prong of Cofield does not always need to be satisfied. See State v. Williams, 190 N.J. 114, 131-34 (2007).

A-0462-16T2

The party seeking to admit other-crime evidence bears the burden to establish each of the four prongs. See State v. J.M., 225 N.J. 146, 158-59 (2016). A court's determination on the admissibility of other-crime evidence is "entitled to deference" and is "reviewed under an abuse of discretion standard." State v. Ramseur, 106 N.J. 123, 266 (1987). "Only where there is a 'clear error of judgment' should the 'trial court's conclusion with respect to [the] balancing test' be disturbed." State v. Marrero, 148 N.J. 469, 483 (1997) (quoting State v. DiFrisco, 137 N.J. 434, 496-497 (1994)).

When weighing the probative value of N.J.R.E. 404(b) evidence against its prejudicial nature under the fourth prong of Cofield, a court must focus on "the specific context in which the evidence is offered[.]" State v. Stevens, 115 N.J. 289, 303 (1989). The court should also consider whether the fact the other-crime evidence is offered to prove "cannot be proved by less prejudicial evidence." State v. Hardaway, 269 N.J. Super. 627, 631 (App. Div. 1994). Further, judicial economy in some circumstances may justify denying a severance motion where many of the same witnesses would need to testify in each trial if the counts were separated. Moore, 113 N.J. at 276.

Here, the motion judge addressed each of the four Cofield factors in detail in her written decision. As to Prong One, the judge found that the evidence

relating to the R.G. shooting, including the photograph of the three guns taken by V.P. after defendant and Johnson indicated they shot the cab driver, was

> material and relevant to the prosecution of the three robberies and would be admissible as material and relevant to the prosecution of [d]efendants for the murder of Rochenel [R.G.]. The evidence tends to show a pattern of knowledge, motive, identity of the perpetrators, absence of mistake, or accident. Testimony as anticipated by the contents of the sworn statements, as well as evidence recovered from Johnson's residence and the photograph taken by [V.P.] are relevant to the issue of possession by each defendant and can be used to establish identity. This evidence places similar firearms in the possession of the defendants over the course of the 13 hours during the commission of each offense charged. It also arguably negates mistake or accident. Defendant Johnson in his statement asserts there was no robbery but only a dispute between [R.G.] and [defendant]; and further that the weapon he carried jammed and did not fire. The [c]ourt, pursuant to N.J.R.E. 404(b), finds that the evidence the State seeks to present would be admissible in each proceeding including the homicide and is therefore not unduly prejudicial and joinder is appropriate.

For Prong Two, the motion judge found "that the three separate robberies were carried out in a similar manner, with similar weapons, and show a pattern of behavior." The judge was also "persuaded that the method of robbery [was] similar in each individual robbery incident and is arguably similar to what occurred during the murder of [R.G.], the only difference being that the final

robbery attempt was unsuccessful, and resulted in [R.G.'s] death." Thus, the judge concluded that the three robberies and R.G.'s shooting were "similar in kind and reasonably close in time" and, therefore the second Cofield factor was satisfied.

Defendant does not challenge the judge's finding that Prong Three was also met. The State's evidence concerning all of the offenses was clear and convincing.

Finally, the judge found under Prong Four that the evidence of each crime was necessary to establish defendant's identity concerning each of the offenses. As the judge noted, the victims' identification of defendant and Johnson in connection with the robberies would "be offered by the State to show that [the two men] were present at the location of each robbery as well as the homicide and that they possessed specific weapons during each incident, using the same modus operandi." The judge further found that judicial economy favored trying the charges together. The judge explained that conducting two separate trials "would be unnecessarily cumbersome on the resources of the State and the [c]ourt" and that defendant failed to show he would be "unduly prejudiced" if all the charges in the indictment were resolved in a single trial. Thus, the judge denied defendant's motion to sever.

A-0462-16T2

We discern no legal error, nor any abuse of discretion in the motion judge's comprehensive analysis of the severance issue. The State established all of the factors militating against severance. The trial judge also instructed the jury to evaluate each offense separately and made clear that defendant was "entitled to have each count considered separately by the evidence which is relevant and material to that particular charge based on the law. . . ."[5] Defendant's convictions on counts seven through sixteen were also supported by sufficient credible evidence. Therefore, we reject defendant's contention on this point.

### III.

Turning to Point II, defendant argues that the trial judge erred by denying his motion for a mistrial after the State attempted to introduce a bullet into evidence that was not related to any of the charges in the indictment. Again, we disagree.

While questioning Detective Thomas McEnroe on June 9, 2016 about the search of defendant's home, the prosecutor marked an envelope containing a "9mm Luger Live Round" for identification as Exhibit S226, and asked the

---

[5] The jury obviously followed this instruction as it acquitted defendant of the charges related to R.G.'s shooting.

detective to identify it. Detective McEnroe stated that Detective Miranda Mathis had recovered the bullet. Defendant's attorney objected to the testimony because Detective McEnroe had not personally recovered the bullet during the search, even though he was also present. After a discussion at sidebar, however, defense counsel stated he would have no objection if Detective McEnroe merely stated that the bullet was the one he saw Detective Mathis recover during the search. Detective McEnroe then identified the bullet as the one found in defendant's home during the search. According to the transcript, the State did not move the bullet into evidence during the detective's testimony.

Prior to the next trial date on June 14, the prosecutor notified defendant's attorney that the State had erred by submitting the bullet for identification at trial because there was no evidence connecting it any of the charges in the indictment. The parties apprised the judge of the issue. Defense counsel filed a motion for a mistrial, and asserted defendant had been unduly prejudiced by the bullet being identified in front of the jury. The judge denied the motion, finding that a mistrial was not necessary "to prevent an obvious failure of justice." Instead, the judge concluded that the prosecutor's mistake could be addressed by applying the "less drastic remedy" of striking the testimony concerning the bullet and giving the jury a strong curative instruction.

A-0462-16T2

The next day, the judge drafted the instruction and reviewed it with both attorneys, who approved it.  At the end of the State's case on June 15, the judge instructed the jury as follows:

> Ladies and Gentlemen of the Jury, you've heard testimony concerning a bullet that was observed by police [at a particular address].  The parties stipulate that [this address] is a multi-family dwelling.  The parties further stipulate that there is no connection between the bullet, defendant, defendant's family, defendant's associates, any crime allegedly committed in this case, or any other criminal activity whatsoever.
>
> Therefore, you are to draw no negative conclusions about defendant from that testimony, and it is stricken from the record.
>
> And what striking means, I will tell you that in my final instructions at the end of the case.

At the end of the trial, the judge further instructed the jury that "[a]ny testimony that I may have had occasion to strike is not evidence, and shall not enter in your final deliberations.  It must be disregarded by you.  That means, even though you may remember the testimony, you're not to use it in your discussions or deliberations."

"The decision to grant or deny a mistrial is entrusted to the sound discretion of the trial court[.]"  State v. Harvey, 151 N.J. 117, 205 (1997).  We "should defer to the decision of the trial court, which is in the best position to

gauge the effect of the allegedly prejudicial evidence." Ibid. We will not disturb a trial judge's ruling on a motion for a mistrial unless it is an abuse of discretion resulting in a "manifest injustice." State v. DiRienzo, 53 N.J. 360, 383 (1969).

Applying these principles, we conclude that the judge properly addressed the issue. The bullet was never admitted into evidence, and Detective McEnroe's testimony concerning it was fleeting. Once the prosecutor discovered his mistake, he apprised defense counsel and the court. The judge issued a forceful and comprehensive curative instruction to the jury to disregard the detective's testimony and the bullet. We presume the jury followed the judge's instructions. State v. Smith, 212 N.J. 365, 409 (2012) (citing State v. Loftin, 146 N.J. 295, 309 (1996)). Under these circumstances, we discern no abuse of discretion in the denial of defendant's motion for a mistrial.

## IV.

Defendant next argues that his sentence was excessive. He asserts that he should have received a lesser sentence because Johnson "only" received an aggregate twenty-year term for his involvement in the robberies for which defendant was also convicted.[6] Defendant also alleges that the judge erred by imposing consecutive sentences, and failed to consider "his youth as a mitigating

---

[6] Johnson received an aggregate twenty-eight year term for all of his offenses.

A-0462-16T2

factor." These arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add the following comments.

Trial judges have broad sentencing discretion as long as the sentence is based on competent, credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500-01 (2005). Judges must identify and consider "any relevant aggravating and mitigating factors" that "are called to the court's attention[,]" and "explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 64-65 (2014) (quoting State v. Blackmon, 202 N.J. 283, 297 (2010)). "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for the judgment of the trial court. Id. at 65; State v. O'Donnell, 117 N.J. 210, 215 (1989); State v. Roth, 95 N.J. 334, 365 (1984).

A principal goal in reviewing sentences "is the elimination of disparity in order to ensure uniformity and predictability." State v. Palma, 219 N.J. 584, 592 (2014). Although "[d]isparity may invalidate an otherwise sound and lawful sentence, . . . '[a] sentence of one defendant not otherwise excessive is not erroneous merely because a co-defendant's sentence is lighter.'" State v. Roach, 146 N.J. 208, 232 (1996) (alteration in original) (citations omitted) (quoting State v. Hicks, 54 N.J. 390, 391 (1969)). "The trial court must determine

A-0462-16T2

whether the co-defendant is identical or substantially similar to the defendant regarding all relevant sentencing criteria." Id. at 233.

Here, Johnson's circumstances were not "identical or substantially similar" to those in defendant's case, primarily because Johnson cooperated with the police, confessed to the crimes, implicated defendant in them, and testified on behalf of the State at trial. Whatever leniency Johnson received was based upon his willingness to cooperate with the State in defendant's prosecution. A sentencing court may and should acknowledge a defendant's cooperation. Dalziel, 182 N.J. at 505-06. Therefore, we reject defendant's contrary conclusion.

We also discern no basis for disturbing the trial judge's decision to impose consecutive fifteen-year sentences for the robberies of all three victims, B.E., E.M., and T.S.. In his comprehensive, oral sentencing opinion, the judge considered each of the factors established by our Supreme Court in State v. Yarbough, 100 N.J. 627, 643-44 (1985). After weighing each of the factors, the judge determined that the three consecutive sentences were appropriate in this case because "there can be no free crimes." Id. at 643. The judge also stated that "[c]rimes involving multiple victims suffering separate and distinct harm represent especially simple circumstances for consecutive [sentences.]"

18                                                                  A-0462-16T2

Quoting State v. Molina, 168 N.J. 436, 441-42 (2001), the judge explained that this is because the "total impact of singular offenses against different victims will generally exceed the total impact on a singular individual who is victimized multiple times." In light of the judge's thorough findings on this issue, we perceive no basis for disturbing this reasoned decision.

Finally, defendant argues for the first time on appeal that the sentence violated principles articulated by the Supreme Court in State v. Zuber, 222 N.J. 422 (2017), cert. denied, 583 U.S. ___, 138 S. Ct. 152 (2017). In Zuber, the Court extended the United States Supreme Court's decision in Miller v. Alabama, 567 U.S. 460, 479 (2012)[7] to juvenile offenders who were sentenced to "the practical equivalent of life without parole[,]" and subject to "multiple terms-of-years sentences that, in all likelihood, will keep him [or her] in jail for the rest of his [or her] life." Zuber, 227 N.J. at 446, 448. In the first of the two cases that were considered in Zuber, the court sentenced the defendant, who was a juvenile at the time he committed the offense, to 110 years in prison with fifty-five years of parole ineligibility. Id. at 428. In the second case, the juvenile received a seventy-five-year term, with sixty-eight years and three months of

---

[7] In Miller, the Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders." Miller, 567 U.S. at 479.

parole ineligibility.  Ibid.  Defendant argues that the trial judge should have considered his "youth as a mitigating factor" and given him a reduced sentence.  This argument fails for several reasons.

First, we normally "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'"  Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).  Neither of those exceptions applies to this case.

Even if we consider defendant's newly minted argument, Zuber has no impact in our review of the sentence because defendant was not a juvenile at the time he committed the armed robberies of the three victims.  He was an eighteen-year-old adult.  In addition, defendant did not receive a mandatory life sentence without the possibility of parole under Miller, or a sentence that was "the practical equivalent of life without parole" under Zuber.

Moreover, the judge mentioned defendant's relative youth throughout his sentencing decision, together with his lack of an adult criminal record.  We are satisfied the judge made findings of fact concerning aggravating and mitigating

20

factors that were based on competent and reasonably credible evidence in the record, and applied the correct sentencing guidelines enunciated in the Code, including the imposition of consecutive sentences. Accordingly, we discern no basis to second-guess the sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0462-16T2