NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0185-17T4

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

v.

JAMAR J. MYERS,

       Defendant-Appellant.

_____

Submitted February 12, 2019 – Decided April 12, 2019

Before Judges Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment Nos. 11-08-0833 and 14-02-0232.

Joseph E. Krakora, Public Defender, attorney for appellant (Tamar Y. Lerer, Assistant Deputy Public Defender, of counsel and on the briefs).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Caitlyn Kelly, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Following the partial denial of a motion to suppress physical evidence, and the partial grant of a motion to introduce evidence of other crimes and bad acts under Rule 404(b), defendant conditionally pled guilty to first-degree felony murder, N.J.S.A. 2C:11-3(a)(3), and first-degree robbery, N.J.S.A. 2C:15-1. In accordance with his plea agreement, defendant was sentenced to an aggregate term of thirty years in prison with thirty years of parole ineligibility. He now appeals from his convictions contending that the entire motion to suppress should have been granted and that all the other-crime and bad-act evidence should have been excluded. We disagree and affirm.

I.

The charges against defendant arose out of an attempted robbery at one pharmacy, a robbery and murder at another pharmacy, and a robbery at a convenience store. All of those events took place within eight days of each other in late April and early May of 2011. We summarize those events in chronological order, discerning the facts from the record developed on the pretrial motions.

On April 29, 2011, at approximately 5:30 p.m., a person attempted to enter the Vizzoni's Pharmacy located in Hamilton. That attempted entry was captured

on video from a surveillance camera showing the area around the entrance to the pharmacy. The video shows a person walk up to the door of the Vizzoni's Pharmacy and attempt to open the door with his right hand while his left hand was in his pocket. The door was locked and the individual turned and walked away. The video shows that the person was wearing dark pants, a dark hooded sweatshirt, a cloth or mask covering part of the person's face, and boots with the tops folded down like "dog ears."

Approximately twenty-five minutes later, at 5:55 p.m. on April 29, 2011, there was a robbery and murder at the Brunswick Avenue Pharmacy (Brunswick Pharmacy) in Trenton. That robbery and murder were also captured on video from surveillance cameras inside the Brunswick Pharmacy. The video shows three people, a man and two women, working in the pharmacy behind a counter. An individual holding a gun in his left hand then comes behind the counter and points a handgun at the employees. A scuffle ensues and the male employee appears to try to take the gun from the intruder. The intruder fires the gun into the male employee's torso, the victim falls to the floor, and the intruder runs away. The victim later died from his gunshot wounds.

The video shows that the suspect was wearing dark clothes including a hooded sweatshirt, his face was partially covered by some type of mask, and he

A-0185-17T4

held a gun in his left hand.  The suspect was also wearing boots, with tops folded down like "dog ears."

On May 6, 2011, at just after 11 p.m., an armed robbery occurred at a store located in Falls Township, Pennsylvania.  The incident was captured on video from surveillance cameras in the store.  The video shows a man enter the store with a handgun and take money from a cash register, while pointing a gun at a clerk.  The robber was wearing a dark colored hooded sweatshirt, a mask, and brown work boots.

Approximately one hour later, just after 12 a.m. on May 7, 2011, two masked men, one of whom appeared to be holding a handgun, robbed a 7-Eleven convenience store in Hamilton.  That robbery was also captured on video from surveillance cameras in the 7-Eleven.  The video showed two men wearing dark clothes come into the 7-Eleven, point what appeared to be a gun at a clerk, take money and a cell phone, and leave.

As the suspects were leaving the 7-Eleven, the clerk pushed a button under the counter.  Shortly thereafter, the police were notified of the armed robbery and a bulletin concerning the robbery was issued.  The bulletin described the suspects as two black males, one with a handgun.

A-0185-17T4

Sergeant Mark Horan of the Hamilton Police Department received the bulletin of the robbery at approximately 12:12 a.m. At that time, he was on patrol in a police vehicle and he began traveling to the 7-Eleven. As he was driving on the street where the 7-Eleven was located, Sergeant Horan saw a car traveling towards him and away from the 7-Eleven. Using a spotlight mounted on his police vehicle, the sergeant shone the light into the oncoming car. He observed a man and a woman, who appeared to react with annoyance or alarm to the spotlight.

The sergeant continued towards the 7-Eleven and when he was less than three-quarters of a mile away, he saw a second car traveling away from the store. The sergeant again used the spotlight to look into that car. He saw three black men in the car and noted that none of them reacted to the spotlight. Sergeant Horan then turned his car around and effectuated a motor vehicle stop of the car containing the three men.

As the car came to a stop, other police officers arrived. Sergeant Horan provided the license plate number and a description of the car to dispatch. Dispatch informed the sergeant that an officer at the 7-Eleven reported that the robbers had been wearing dark clothing. Sergeant Horan and two other police officers approached the car with their guns drawn. As he approached the

vehicle, Sergeant Horan saw dark jackets on the back seat of the car. Shortly thereafter, dispatch informed Sergeant Horan that the car had been reported as stolen. Thus, the three occupants of the car were arrested. The police, thereafter, learned that the driver of the car was Ajene Drew, the front passenger was Peter Nyema, and defendant was the rear passenger.

After the occupants of the car were secured, Sergeant Horan took the dark clothing from inside the vehicle. The sergeant and several other officers then searched the car. They found a handgun wrapped in a bandana under the hood, and additional clothing in the trunk of the car. The three suspects were also searched incident to their arrest. Drew was found to have $55 in cash, Nyema was found to have $303 in cash, and defendant had cash of $230.40.

Following his arrest, Drew agreed to speak with law enforcement officers after he received and waived his Miranda[1] rights. Ultimately, Drew implicated defendant in the robbery at the 7-Eleven. He also informed law enforcement officers that defendant had been involved in the robbery and murder at the Brunswick Pharmacy. Thereafter, Drew pled guilty to two second-degree

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

weapons offenses and he agreed to cooperate by giving testimony against defendant and Nyema.

As part of their investigation, law enforcement officers collected the video surveillance footage from the cameras at the Vizzoni's Pharmacy, the Brunswick Pharmacy, the store in Pennsylvania, and the 7-Eleven store. A detective also interviewed defendant on two occasions. During those interviews, the detective noted that defendant's right leg bowed outward when he walked at a normal pace. In that regard, defendant informed the detective that he had injured his right leg as a child. The detective also observed that defendant used his left hand when signing a Miranda waiver form.

In July 2011, defendant was charged, under Indictment 11-08-0833, with eight crimes in connection with the robbery of the 7-Eleven. Those crimes included: first-degree robbery, N.J.S.A. 2C:15-1; third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4);[2] third-degree terroristic threats, N.J.S.A. 2C:12-3(a); second-degree

---

[2]  We note that the indictment lists the statute as N.J.S.A. 2C:12-1(b)(1), however, the language used in the indictment, i.e., that defendant "knowingly, under circumstances manifesting extreme indifference to the value of human life, point a firearm[,]" comes from N.J.S.A. 2C:12-1(b)(4). Moreover, the indictment lists the charge as a fourth-degree offense, and N.J.S.A. 2C:12(b)(4) is a fourth-degree offense, while the statute listed in the indictment, N.J.S.A. 2C:12-1(b)(1), is a second-degree offense. See N.J.S.A. 2C:12-1(b).

possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d); third-degree theft by receiving stolen property, N.J.S.A. 2C:20-7(a), and fourth-degree unlawful taking of a means of conveyance, N.J.S.A. 2C:20-10(d).

Defendant moved to suppress the physical evidence seized when he and his co-defendants were arrested. The trial court conducted an evidentiary hearing on May 14, May 15, and August 7, 2013. Thereafter, the court granted the motion in part, suppressing admission of the handgun, and denied the motion in part, ruling that the clothing and money seized from the car and defendant's person were lawfully seized. The court explained the reasons for its ruling on the record on August 7, 2013, and September 16, 2013, and issued an order on October 4, 2013.

In making those rulings, the court found that defendant had no reasonable expectation of a right to privacy in the car because it had been stolen. The court went on to find that the stop of the car was lawful as an investigatory stop. The court also found that the clothing was lawfully seized under the plain-view exception to the warrant requirement.

A-0185-17T4

In February 2014, defendant was charged, under superseding Indictment 14-02-0232, with twelve crimes in connection with the attempted robbery of the Vizzoni's Pharmacy and the robbery and murder at the Brunswick Pharmacy. Specifically, defendant was indicted for first-degree murder, N.J.S.A. 2C:11-3; first-degree murder as an accomplice, N.J.S.A. 2C:11-3(a) and N.J.S.A. 2C:2-6; first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree robbery, N.J.S.A. 2C:15-1; four counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); fourth-degree tampering with evidence, N.J.S.A. 2C:28-6(1); and first-degree attempted robbery, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:5-1.

In connection with the indictment charging defendant with the attempted robberies and murder at the Vizzoni's Pharmacy and the Brunswick Pharmacy, the State moved, under Rule 404(b), to introduce evidence of other crimes and bad acts. Specifically, the State sought to introduce video footage from the robberies at the 7-Eleven store and the Pennsylvania store to help prove defendant's identity. The State also sought to introduce a letter defendant had allegedly written, which the State contended made a threat against a witness and, therefore, showed defendant's consciousness of guilt. Defendant opposed that

motion and sought to sever the counts of Indictment 14-02-0232 so that the crimes related to the events at the Brunswick Pharmacy would be tried separately from the crimes related to the events at the Vizzoni's Pharmacy.

A two-day evidentiary hearing was conducted on November 10, 2015, and August 30, 2016, during which the State presented testimony from three detectives and introduced into evidence various exhibits, including the video footage from the four stores. On September 30, 2016, the trial court issued a written opinion granting the motion in part and denying the motion in part. The court found that the crimes related to the Vizzoni's Pharmacy and the Brunswick Pharmacy could be tried together. The court also ruled that surveillance video footage from the Hamilton 7-Eleven could be used at the trial for the crimes that occurred at the pharmacies. The State was also granted permission to use the letter to show consciousness of defendant's guilt. The court denied the State's request to use evidence, including the video footage, of the robbery that took place at the Pennsylvania store.

Following that ruling, on November 29, 2016, defendant entered conditional guilty pleas. Under Indictment 14-02-0232, he pled guilty to first-degree felony murder in connection with the murder during a robbery at the

Brunswick Pharmacy. Under Indictment 11-08-0833, he pled guilty to first-degree robbery at the 7-Eleven store.

Defendant was sentenced on July 7, 2017. On the conviction for first-degree felony murder, defendant was sentenced to thirty years in prison with thirty years of parole ineligibility. On the conviction for first-degree robbery, defendant was sentenced to twelve years in prison, subject to a period of parole ineligibility and parole supervision as prescribed by the No Early Release Act, N.J.S.A. 2C:43-7.2. The sentence for the conviction of first-degree robbery was run concurrent to the sentence for the conviction of first-degree felony murder.

II.

On appeal, defendant, through counsel, makes the following arguments:

POINT I – THE TRIAL COURT ERRED IN RULING THAT A SLEW OF OTHER-BAD-ACT EVIDENCE COULD BE ADMITTED AT A JOINT TRIAL OF THE TWO PHARMACY INCIDENTS.

A. Evidence Of The Vizzoni Pharmacy And Hamilton 7-11 Incidents Do Not Meet The Standards To Prove Identity Of The Perpetrator In The Brunswick Avenue Incidents Under N.J.R.E. 404(b).

B. There Was No Clear And Convincing Evidence That The Letter The State Sought To Admit Was Written By Defendant And It

11

Was More Prejudicial Than Probative. Therefore, It Was Inadmissible Under N.J.R.E. 404(b).

POINT II – BECAUSE THERE WAS NO REASONABLE SUSPICION FOR THE CAR STOP, ALL EVIDENCE FOUND IN THE CAR MUST BE SUPPRESSED.

    A.    The Men Were Illegally Stopped Based On A Bare-Bones, Racialized Description Of The Suspects And Without Any Further Indicia Probative Of Criminal Activity.

    B.    Even If The Car Stop Were Lawful, The Plain View Exception To The Warrant Requirement Did Not Justify The Warrantless Entry Into And Search Of The Car.

Defendant also submitted his own brief, in which he made additional points related to the arguments made by his counsel. In essence, in his pro se brief, defendant argues that the trial court (1) abused its discretion in allowing the use of evidence of the robbery at the 7-Eleven under Rule 404(b); (2) abused its discretion in allowing the use of the alleged "threat letter" because there were no facts showing that the letter was threatening or authored by defendant; and (3) erred in not severing the charges arising out of the events at the Vizzoni's Pharmacy and the Brunswick Pharmacy because those matters were two distinct incidents.

12

Taken all together, defendant is challenging the trial court's decisions on the motion to suppress, the severance ruling, and the motion to admit evidence under Rule 404(b). We will address these issues in the procedural order in which they arose.

A. The Motion to Suppress

Our review is limited when a motion to suppress is denied following an evidentiary hearing. We defer to the factual and credibility findings made by the trial court, "so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Deference is afforded "because the 'findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015) (citing State v. Johnson, 42 N.J. 146, 162 (1964)). The legal conclusions of a trial court are reviewed de novo. Id. at 263 (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

The Fourth Amendment states that

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[U.S. Const. amend. IV; see also N.J. Const. art. I, ¶ 7 (using essentially identical language).]

Warrantless searches are presumed invalid, but the State may overcome that presumption by showing that the search fell into one of the recognized exceptions to the warrant requirement. State v. Hummel, 232 N.J. 196, 207 (2018); see also State v. Hill, 115 N.J. 169, 173-74 (1989). The search and seizure at issue on this appeal involved two exceptions to the warrant requirement: (1) an investigatory stop; and (2) the plain-view doctrine.

1. An Investigatory Stop

To lawfully stop a motor vehicle, a police officer must have a "reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense[.]" State v. Scriven, 226 N.J. 20, 33-34 (2016) (citing Locurto, 157 N.J. at 470). Accordingly, an investigatory stop is permissible "if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." State v.

14

Chisum, ____ N.J. ____, ____ (2019) (slip op. at 18) (quoting State v. Pineiro, 181 N.J. 13, 20 (2004)).

"[I]n determining the lawfulness of an investigatory stop, a reviewing court must 'evaluate the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions.'" State v. Privott, 203 N.J. 16, 25-26 (2010) (quoting State v. Davis, 104 N.J. 490, 504 (1986)). "An investigative detention that is premised on less than reasonable and articulable suspicion is an 'unlawful seizure,' and evidence discovered during the course of an unconstitutional detention is subject to the exclusionary rule." Elders, 192 N.J. at 247 (citing State v. Rodriguez, 172 N.J. 117, 132-33 (2002)).

Here, after hearing the testimony of Sergeant Horan, the trial court found that the sergeant had acted with reasonable and particularized suspicion in stopping the car. In that regard, the trial court noted that there were several facts, which, together with rational inferences, gave rise to a reasonable suspicion that the occupants of the car may have been involved in the robbery of the 7-Eleven. For example, the trial court found that there was a short period of time between when the robbery was reported and when the stop took place.

A-0185-17T4

The court also found that the car had been traveling on the street where the 7-Eleven was located and that the car was traveling away from the 7-Eleven. The court then noted that there were three occupants in the car who did not react to the spotlight and that lack of reaction raised a reasonable suspicion. The court also reasoned that dispatch had just informed Sergeant Horan that the suspects were two African-American men and the occupants of the car were three African-American men. Based on those facts, the court found that there was a reasonable and particularized suspicion justifying the investigatory stop of the car. The trial court's factual findings are supported by the record and the court's legal conclusion is consistent with and supported by case law.

Defendant argues that the stop was illegal because it was only based on the fact that the occupants of the vehicle were African-American men. The trial court specifically rejected that argument. In that regard, the trial court pointed out that the suspects were reported to be African-American and, therefore, there was a reasonable and particularized suspicion to conduct an investigatory stop of a vehicle with African-American men inside when that vehicle was seen a short distance from the 7-Eleven in the early morning when there were few other cars on the road. Again, those factual findings are supported by the evidence in the record, and we discern no basis to reverse that decision.

A-0185-17T4

## 2. The Plain-View Exception

The plain-view exception allows police to seize contraband in plain view without a warrant if three requirements are met: "(1) the officer must be lawfully in the viewing area when making the observation; (2) 'the discovery of the evidence . . . must be inadvertent,'" State v. Gonzales, 227 N.J. 77, 91 (2016) (citations omitted) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 468, 469 (1971)); and (3) the "police officer must have 'probable cause to associate the property with criminal activity.'" State v. Bruzzese, 94 N.J. 210, 237 (1983) (quoting Texas v. Brown, 460 U.S. 730, 741-42 (1983)).

In Gonzales, the New Jersey Supreme Court eliminated the inadvertence prong of the plain-view test. Gonzales, 227 N.J. at 99. The Court, however, applied that new rule of law prospectively as of the date of the opinion—November 15, 2016. Id. at 101. The search at issue in this case took place on May 7, 2011, and therefore, we analyze the officer's actions under the pre-Gonzales standard.

Furthermore, an "observation into the interior of an automobile by a police officer located outside the automobile is not a 'search' within the meaning of the Fourth Amendment." State v. Reininger, 430 N.J. Super. 517, 534 (App. Div. 2013) (quoting State v. Foley, 218 N.J. Super. 210, 2015 (App. Div. 1987)).

17

When an officer seizes contraband in plain view from an automobile, it is "not necessary for the State to establish exigent circumstances[.]" Id. at 537.

In this case, the trial court credited Sergeant Horan's testimony that as he approached the vehicle, he looked inside, and in plain view saw black jackets. The trial court also credited the sergeant's testimony that he had been informed that the robbery suspects had worn dark clothing and, therefore, he recognized the jackets as potential evidence related to the robbery. Those factual findings are all supported by substantial credible evidence presented at the pretrial hearing.

Moreover, those factual findings satisfy the three requirements of the plain-view exception. Sergeant Horan was lawfully in the viewing area because he was engaged in a lawful investigatory stop and, therefore, he was lawfully outside the car. From that lawful position, he "inadvertently" saw the jackets because he had a right to look into the car particularly when he was approaching a vehicle where one of the suspects may have been armed. Finally, the discovery of the jackets was inadvertent in the sense that the sergeant was investigating a robbery, but not necessarily looking for the clothing that the robbers wore. We, therefore, discern no basis to reverse the trial court's determination that the clothing taken from the car was lawfully seized.

18

Defendant argues that even if the elements of the plain-view exception were satisfied, the police officers could not lawfully go into the car itself without a warrant. We reject that argument given the facts of this case. In connection with denying the motion to suppress the evidence seized from the car, the trial court also found that the police had been informed that the vehicle had been stolen. Indeed, the three suspects had been removed from the car and arrested based on the information that the vehicle had been stolen. Under those circumstances, the police had a lawful basis to enter the vehicle, which had been stolen, for the limited purposes of retrieving the jackets. See State v. Mann, 203 N.J. 328, 341 (2010) (finding that plain-view observation of contraband in a vehicle justified immediate seizure of the contraband).

B. Severance

Rule 3:7-6 allows for two or more offenses to be charged together in the same indictment "if the offenses charged are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan." Under Rule 3:15-2(b), "[i]f for any other reason it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses . . . in an indictment . . . the court may order an election or separate trials of counts[.]"

We review a court's ruling on a severance motion for abuse of discretion. State v. Chenique-Puey, 145 N.J. 334, 341 (1996). The decision whether to deny defendant's motion to sever counts at trial "rests within the trial court's sound discretion and is entitled to great deference on appeal." State v. Brown, 118 N.J. 595, 603 (1990). Thus, the "[d]enial of such a motion will not be reversed in the absence of a clear showing of a mistaken exercise of discretion." State v. Krivacska, 341 N.J. Super. 1, 38 (App. Div. 2001) (citing State v. Rosenberg, 37 N.J. Super. 197, 202 (App. Div. 1955)).

In ruling on a motion to sever, the court should consider the potential harm to the defendant, as well as the need for judicial economy and expediency. State v. Coruzzi, 189 N.J. Super. 273, 297-98 (App. Div. 1983). The key to determining whether joinder is prejudicial to a defendant is whether, if the crimes were tried separately, evidence of the severed offenses would be admissible under Rule 404(b) in the trial of the remaining charges. State v. Sterling, 215 N.J. 65, 73 (2013) (quoting Chenique-Puey, 145 N.J. at 341). "If the evidence would be admissible at both trials, then the trial court may consolidate the charges because 'a defendant will not suffer any more prejudice in a joint trial than he would in separate trials.'" Chenique-Puey, 145 N.J. at 341 (quoting Coruzzi, 189 N.J. Super. at 299).

A-0185-17T4

Rule 404(b) provides that, "[e]xcept as otherwise provided by Rule 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith." However, "[s]uch evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b). "The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because he is a bad person in general." State v. Rose, 206 N.J. 141, 159 (2011) (quoting State v. Cofield, 127 N.J. 328, 336 (1992)).

A four-prong test guides the admissibility of evidence of other crimes or wrongs:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Id. at 159-60 (quoting Cofield, 127 N.J. at 338).]

Here, we discern no abuse of discretion in the trial court's decision not to sever the trial of the attempted robbery at the Vizzoni's Pharmacy from the robbery, murder, and related crimes at the Brunswick Pharmacy. Having reviewed the video footage from the surveillance cameras at the two pharmacies, the court found that the videos were reliable evidence that would help to identify defendant. Defendant's identity was a material issue. The two instances were similar in kind and very close in time. Less than half an hour before the robbery and murder at the Brunswick Pharmacy, an individual wearing clothing similar to the individual at the Brunswick Pharmacy attempted to enter the Vizzoni's Pharmacy. The evidence concerning defendant's attempt to enter the Vizzoni's Pharmacy was clear and convincing from the video footage. Whether a jury would have found that evidence sufficient to prove defendant intended to commit a robbery was an issue for the jury. Finally, the probative value of the video evidence from the two pharmacies was not outweighed by its apparent prejudice.

Defendant argues that the trial court did not conduct an analysis under Rule 404(b). We are not persuaded by that argument because the court considered that evidence in the context of a Rule 404(b) motion, and the evidence supported the court's ruling that severance was not warranted.

22

C.  Rule 404(b); Other-Crimes and Bad-Act Evidence

"Appellate courts generally defer to trial court rulings on the admissibility of evidence of other crimes, unless those rulings constitute an abuse of discretion."  State v. Erazo, 126 N.J. 112, 131 (1991) (first citing State v. Ramseur, 106 N.J. 123, 265-66 (1987); then citing State v. Atkins, 78 N.J. 454, 462 (1979)).

Following an evidentiary hearing, the trial court here ruled that the surveillance video footage from the 7-Eleven store could be used by the State to prove defendant's identity at the trial for the crimes allegedly committed at the two pharmacies.  The court also ruled that the State could use a letter to prove defendant's consciousness of guilt.  In making those rulings, the trial court issued a written opinion setting forth its analysis of the Cofield factors.

With regard to the surveillance videos, the court first found that identity was a material issue.  Second, the court found that the robbery at the 7-Eleven was similar to the robbery at the Brunswick Pharmacy and the attempted robbery at the Vizzoni's Pharmacy, and that those events occurred within eight days of each other.  Third, the court found that the evidence concerning the 7-Eleven store was clear and convincing.  In that regard, the court relied on the testimony of witnesses at the hearing and reviewed the surveillance videos.  The court

noted that the suspect depicted in the videos bore a number of similarities, including a distinctive bow-legged gait and the fact that the suspect held a gun in his left hand. Finally, the court found that the probative value of the surveillance video footage from the 7-Eleven was not outweighed by its apparent prejudice.

We discern no abuse of discretion in the court's ruling that the State could use the surveillance video footage to prove identification. In that regard, we note that the court made this as a pretrial ruling. Whether the evidence would have convinced a jury beyond a reasonable doubt was an issue to be addressed at the trial. See Model Jury Charges (Criminal), "Identification: In-Court and Out-of-Court Identifications" (rev. July 19, 2012) ("The burden of proving the identity of the person who committed the crime is upon the State. For you to find this defendant guilty, the State must prove beyond a reasonable doubt that this defendant is the person who committed the crime."); State v. Cotto, 182 N.J. 316, 325 (2005).

We also discern no abuse of discretion in the trial court's ruling that the State could use the letter at trial. At the pretrial hearing, the State proffered a letter that it alleged was signed by defendant. The State represented that the

24

letter had been located on an individual who was hospitalized. In relevant part, the letter stated:

> Look, I need something to happen because it will help my situation out a lot better. I need you to find a loyal [person] who not dumb and is about his action. I didn't need nobody 'put under' water I just need something to be said to a young female. I not going to get all into it it ain't no need until I know you can make something happen.

The State argued that the subject of the threat of the letter was a female witness who had provided a statement to the prosecutor's office in which she implicated defendant in the murder at the Brunswick Pharmacy.

The trial court ruled that the letter would be admissible, subject to a proper foundation at trial, on the issue of demonstrating defendant's consciousness of his own guilt. In making that ruling, the court relied on our decision in State v. Buhl, 269 N.J. Super. 344 (App. Div. 1994). Again, we note that this was a pretrial ruling on potential admission, which would have been subject to the State laying a proper foundation for the letter at trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0185-17T4