**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3699-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DONALD WATKINS, a/k/a
MICHAEL WATKINS,

    Defendant-Appellant.

_____

Submitted December 19, 2023 – Decided March 13, 2025

Before Judges Rose and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 13-08-2592.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

Defendant appeals from a June 15, 2022 order denying his petition for post-conviction relief (PCR) without a hearing. On appeal, he renews his claims that trial counsel was ineffective for failing to adequately cross-examine and impeach the State's witnesses and failing to call certain police officers as defense witnesses. He also challenges appellate counsel's effectiveness for failing to raise the denial of trial counsel's motions for a mistrial. We affirm.

I.

We derive the salient facts and procedural history from the record and our opinion affirming defendant's conviction and sentence, State v. Watkins (Watkins), No. A-0508-18 (App. Div. Apr. 30, 2020) (slip op. at 3-4).

On January 18, 2013, defendant approached Camille Walker and allegedly threatened to kill her. Walker contacted the police, who arrived on the scene and spoke with both Walker and defendant but took no further action. Later that day, defendant jumped in front of a car driven by Latonya Damon and threatened to kill her and Walker, who was a passenger in Damon's car. Damon's brother and several police officers witnessed this event, but defendant was not arrested.

Following [these] two encounters . . . Damon, Joseph Hawkins, and Damon's son[, Lorenzo Fuller,] were sitting in Damon's car parked in front of her house.

. . . .

Damon saw defendant "running up" to the car from "the corner where his house" was located, pulling a mask over his face. Before she left her house and entered the car, she saw defendant standing across the street wearing the same clothes he wore during the earlier encounters. Because defendant threatened Damon earlier in the day, she drove off. She saw defendant "stand there and point" and heard gunshots, although she never saw a gun. Bullets struck the rear of the car; one struck Hawkins.

. . . .

Within minutes, at approximately 6:30 p.m., [a homicide detective with the Camden County Prosecutor's Office] was dispatched to the location at which Damon's car was shot on the 200 block of Rand Street. As he approached Damon's house, a woman exited a residence "and was very nervous and scared and excited." She pointed "catty-corner to her residence." The detective "was trying to calm her down" and "asked her if everybody was okay and what was going on." . . . [T]he detective said the woman "with her excitement was pointing at the residence and said, ['defendant] just shot. He ran that way.['] And then started to point down Bank Street towards Boyd" Street.

[Watkins, slip op. at 3-4 (last two alterations in original).]

A-3699-21

On August 27, 2013, a grand jury charged defendant with: one count of third-degree threat to kill, N.J.S.A. 2C:12-3(b) (count one); three counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (counts two, three, and four); three counts of third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (counts five, six, and seven); three counts of fourth-degree aggravated assault with a firearm, N.J.S.A. 2C:12-1(b)(4) (counts eight, nine, and ten); one count of second degree possession of a weapon for an unlawful purpose – firearm, N.J.S.A. 2C:39-4(a) (count eleven); one count of second-degree unlawful possession of a weapon – handgun, N.J.S.A. 2C:39-5(b) (count twelve); and one count of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b) (count thirteen).

A trial took place over seven days between January 6, 2016 and January 21, 2016. The State presented the testimony of Damon, Walker, Fuller, and Hawkins, along with Detective Dennis Convery, Detective Raul Beltran, and Detective Edward Burek, Jr. Trial counsel called three witnesses: Kiana Kelly, Doreen Kelly, and Cherrice Campbell.

On January 21, 2016, the jury convicted defendant of all thirteen charges. Defendant was sentenced to an aggregate twenty-eight-year prison term,

A-3699-21

including a seventeen-year prison term subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, on the second count.

Defendant filed a pro se petition. Thereafter counsel was assigned and filed a supplemental brief, arguing that trial counsel was ineffective for failing to: (1) impeach Damon and Walker regarding their statements on a vehicle that fled the scene; (2) highlight contradictions in Damon's and Walker's testimony on cross-examination; (3) request a supplemental jury charge regarding Damon's and Walker's identification of defendant as the shooter; and (4) call as witnesses the officers present at the two incidents prior to the shooting. Defendant further argued that appellate counsel was ineffective for failing to appeal the trial court's denial of several motions for a mistrial. Finally, defendant argued that the cumulative impact of these errors justified the vacating of his sentence. Defendant sought an evidentiary hearing.

The PCR court rejected defendant's petition without an evidentiary hearing, making findings in an oral statement of reasons.

The PCR court first determined that, because neither Damon nor Walker testified about the vehicle that defendant fled the scene in, there were "no prior inconsistent statements to impeach." It noted that trial counsel had cross-examined both Damon and Walker on the issue of lighting and had cross-

examined Walker about whether she saw defendant wearing a mask at the time of the shooting. The PCR court further found that, because there was no model jury charge on the issue of lighting and the trial court referenced the lighting issue in its credibility charge, trial counsel was not ineffective for failing to request a supplemental jury charge.

The PCR court then made findings on trial counsel's decision not to call the officers that responded when defendant initially threatened to kill Damon and Walker. The court noted that determining which witnesses to call is "one of the most difficult strategic decisions that any trial attorney must confront." State v. Arthur, 184 N.J. 307, 320-21 (2005). It found that trial counsel was entitled to deference and that calling the officers "couldn't have possibly been beneficial to the point of . . . changing the outcome."

Finally, the PCR court considered defendant's ineffective assistance of counsel (IAC) claims regarding appellate counsel. It found that, in both instances where trial counsel moved for a mistrial, the trial court provided a curative instruction to the jury. The PCR court further found there was no "showing of how the defendant was prejudice[d] by how this was handled in the trial, and there's also not a showing of any reasonable probability of there being

6

a different outcome . . . given that the trial judge [gave] such clear and immediate curative instructions."

Finding that defendant failed to make a prima facie showing that either trial or appellate counsel were ineffective, the PCR court determined that defendant was not entitled to an evidentiary hearing.

Defendant argues the following points on appeal:

> POINT ONE - DEFENDANT RAISED PRIMA FACIE CLAIMS FOR [PCR] WHICH ENTITLED HIM TO AN EVIDENTIARY HEARING
>
> > A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS FOR [IAC], EVIDENTIARY HEARINGS AND PETITIONS FOR POST-CONVICTION RELIEF
> >
> > B. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY CROSS-EXAMINE STATE'S WITNESSES
> >
> > C. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL AS DEFENSE WITNESSES POLICE OFFICERS WHO RESPONDED TO THE INCIDENT IN WHICH DEFENDANT ALLEGEDLY MADE THREATS TO KILL
> >
> > D. APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE ISSUE OF THE DENIAL OF TRIAL COUNSEL'S MOTION FOR MISTRIAL DUE TO PROSECUTION WITNESSES'

7

REFERENCES TO PAST BAD ACTS AND A
RESTRAINING ORDER

II.

We use a de novo standard of review when a PCR court does not conduct an evidentiary hearing. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)). When petitioning for PCR, a defendant must establish he is entitled "to PCR by a preponderance of the evidence." State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014) (citing State v. Preciose, 129 N.J. 451, 459 (1992)).

We analyze IAC claims using the two-prong test established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Preciose, 129 N.J. at 463; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey). The first prong of the Strickland test requires a defendant to establish counsel's performance was deficient. Preciose, 129 N.J. at 463. "The second, and far more difficult, prong of the Strickland . . . test is whether there exists 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 463-64 (quoting Strickland, 466 U.S. at 694).

There exists a strong presumption counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment. Strickland, 466 U.S. at 689. Further, because prejudice is not presumed, a defendant must demonstrate how specific errors by counsel undermined the reliability of the proceeding. State v. Drisco, 355 N.J. Super. 283, 289-90 (App. Div. 2002) (citing U.S. v. Cronic, 466 U.S. 648, 659 n.26 (1984)).

A defendant may not rely on "bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). A court must reject a claim if it rests on allegations that "are too vague, conclusory, or speculative . . . ." State v. Porter, 216 N.J. 343, 355 (2013) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)). The petition, therefore, must allege specific facts that are "sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170.

## III.

In light of our well-settled jurisprudence and for the reasons substantially expressed by the PCR court, we conclude defendant failed to overcome the strong presumption counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. We review each claim.

9

A.

Defendant claims defense counsel failed to adequately emphasize the differing testimony between Damon and Walker regarding whether the shooter was wearing a mask. This claim is belied by the record.

During cross-examination, defense counsel heavily pressed Walker over whether she saw the shooter wearing a mask.

> [TRIAL COUNSEL]: Okay. When you saw Mr. Watkins that evening before the shooting was he wearing a ski mask?
>
> [WALKER]: No.
>
> [TRIAL COUNSEL]: At any point did you see him wearing a ski mask?
>
> [WALKER]: I didn't see no ski mask.
>
> [TRIAL COUNSEL]: Are you aware that multiple witnesses have told the police the shooter was wearing a ski mask?
>
> [WALKER]: I was interviewed by myself with the police. I told the police what I saw.
>
> [TRIAL COUNSEL]: So the person you saw running down the street shooting never had a ski mask on, correct?
>
> [WALKER]: I never seen nobody shooting. I was down on the floor.

10

[TRIAL COUNSEL]: Okay. You never saw Mr. Watkins wearing a ski mask, correct?

[WALKER]: Yes, I never saw him wearing a ski mask.

[TRIAL COUNSEL]: Okay. As he came across the street according to your testimony he was not wearing a ski mask, correct?

[WALKER]: Never saw a ski mask.

[TRIAL COUNSEL]: And when you saw him later running away he wasn't wearing a ski mask, correct?

[WALKER]: Correct.

[TRIAL COUNSEL]: Okay.

[WALKER]: I saw the back of him.

Trial counsel called three witnesses, Kiana Kelly, Doreen Kelly, and Cherrice Campbell, who all testified defendant was at a birthday party that night. Only Kiana Kelly testified that defendant was at the party at an early enough hour to have prevented him from being the shooter.

Trial counsel also examined Damon on this subject. Further, the record shows trial counsel attacked the veracity and accuracy of the witnesses' testimony identifying the defendant as the shooter and attempted to cast doubt on their testimony by calling three alibi witnesses. These actions by counsel

11

reflect valid trial strategy. Defendant's IAC claims on this issue are without merit.

B.

We reject defendant's claim that trial counsel was ineffective for failing to call the police officers who responded to the two incidents prior to the shooting.

"Courts defer to a trial counsel's decisions regarding the calling of witnesses to testify during trial." Arthur, 184 N.J. at 321; see also State v. Pierre, 223 N.J. 560, 579 (2015) (recognizing the difficulty of determining which witnesses to call and holding a court should defer to a defense counsel's decision whether to call a witness). "Determining which witnesses to call . . . is one of the most difficult strategic decisions that any trial attorney must confront . . . [t]herefore . . . a court's review of such a decision should be 'highly deferential.'" Arthur, 184 N.J. at 320-21 (quoting Strickland, 466 U.S. at 689).

Here, defendant only speculates about how the officers would have testified, offering no facts to support his claims. We conclude that the testimony defendant posits those witnesses would offer would not have substantially impacted the trial outcome, State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022).

C.

We now turn to defendant's argument that appellate counsel was ineffective for failing to appeal the trial court's denial of two motions for mistrial made during the trial proceedings. We conclude defendant failed to make a prima facia case.

To obtain a new trial based on ineffective assistance of appellate counsel, a defendant must establish that appellate counsel failed to raise an issue that would have constituted reversible error on direct appeal. State v. Echols, 199 N.J. 344, 361 (2009). Appellate counsel will not be found ineffective if counsel's failure to appeal the issue could not have prejudiced the defendant because the appellate court would have found either that no error had occurred or that it was harmless. State v. Reyes, 140 N.J. 344, 365 (1995); Harris, 181 N.J. at 499. Consequently, appellate counsel is not required to raise every possible issue and need only raise issues that have a reasonable possibility of success. State v. Gaither, 396 N.J. Super. 508, 515-16 (App. Div. 2007); State v. Morrison, 215 N.J. Super. 540, 549 (App. Div. 1987) (noting "appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant").

The record shows trial counsel sought a mistrial on two occasions. Counsel made the first motion during redirect, when Damon testified to threats made by defendant earlier on January 18, 2013.

> [PROSECUTOR]: Okay. And, so, you were focused on Mr. Watkins at that point?
>
> [DAMON]: Yes, because he's been coming – he came to my house and arguing and threatening earlier that day as well. It's like –
>
> [PROSECUTOR]: Okay.
>
> [DAMON]: -- he always do it.
>
> [PROSECUTOR]: Okay.
>
> [TRIAL COUNSEL]: Objection, Your Honor. And I'd like to come to sidebar.
>
> THE COURT: I'll strike that last comment that that's what he's always doing.
>
> [DAMON]: Oh, I apologize.
>
> THE COURT: The jury should disregard that.
>
>     . . . .
>
> [TRIAL COUNSEL]: Your Honor, I'm moving for a mistrial[. In the court's N.J.R.E. 404(b) decision,] you allowed in very limited [testimony.] It doesn't include her being allowed to say he's always coming to the house threatening us. He had been over to the house earlier that day. None of that was admitted under [N.J.R.E. 404(b)] by the court's ruling.

14

The trial judge overruled the request for a mistrial, but issued the following instruction to the jury:

> Members of the jury, to the extent that there was a comment by the witness as to the other exchanges between this witness and the defendant that is not part of anything that you could -- should consider here as part of the evidence when you deliberate in this case. It's irrelevant to the issues before you, and you should limit your consideration to those items and that evidence and that testimony that is properly admissible for your consideration. So, to the extent there was testimony other than the incident where . . . it's alleged Mr. Watkins walked in front of the car that should be disregarded by you.

Trial counsel sought a mistrial for the second time when, during direct examination, Walker testified about a restraining order between her family and defendant's family.

> [WALKER]: I was coming back from getting my hair done and I was knocking on the door of [XXX] where Latonya lives to get in the house. He was coming from our of Mc[G]uire Projects calling me trying to talk to me about a case that was -- a restraining order case that his family members and my family members were in. I told him there was no reason to discuss anything. Everything that was done was done in court.
>
> [TRIAL COUNSEL]: Your Honor, at this point I'm going to object and –
>
> THE COURT: Hold on a second, ma'am.
>
> [TRIAL COUNSEL]: -- ask to go to sidebar.

15

[TRIAL COUNSEL]: And, again, I'm moving for a mistrial. There should have never been any mention of restraining orders brought up. There was no motion made beforehand by the State to enter that evidence.

The trial judge issued the following curative instruction.

Members of the jury, you heard mention of a restraining order. First of all, that restraining order did not involve Mr. Watkins, the defendant. And, so, you should not consider anything or any mention of a restraining order in reaching a decision and verdict in this case.

Not only may you not consider it, but I'm specifically instructing you that it did not involve this defendant.

"'Whether testimony or a comment by counsel is prejudicial and whether a prejudicial remark can be neutralized through a curative instruction or undermines the fairness of a trial are matters peculiarly within the competence of the trial judge.'" State v. Patterson, 435 N.J. Super. 498, 509 (App. Div. 2014) (internal quotation marks omitted) (quoting State v. Yough, 208 N.J. 385, 397 (2011)). "Accordingly, '[a]n appellate court will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice.'" Id. at 509-10 (internal quotation marks omitted) (quoting State v. Jackson, 211 N.J. 394, 407 (2012)).

However, evidence that a restraining order has been issued against a defendant is generally inadmissible in a criminal trial. State v. Chenique-Puey, 145 N.J. 334, 343 (1996) (finding restraining order inadmissible in criminal trial

16

except "for the limited purpose of impeaching the defendant's testimony" if defendant testifies). Admitting a restraining order can bolster a victim's testimony and unduly prejudice a defendant's right to a fair trial. See Chenique-Puey, 145 N.J. at 343 (noting that a "jury could interpret the order as a judicial imprimatur on the victim's testimony").

When inadmissible evidence of a restraining order is presented to a jury, the trial court must give a curative instruction "to alleviate potential prejudice to a defendant," or defendant is entitled to reversal of his or her conviction. State v. Vallejo, 198 N.J. 122, 135 (2009). The instruction, moreover, must generally "be firm, clear, and accomplished without delay." Id. at 134; see also State v. Prall, 231 N.J. 567, 586 (2018) (explaining that "a curative instruction may sometimes be a sufficient remedy").

We conclude that defendant was not prejudiced by appellate counsel's strategic decision not to appeal the trial court's two mistrial denials. Immediately after counsel made both motions, the trial court provided firm and clear curative instructions to the jury. Regarding the restraining order, the court instructed the jury to not consider the restraining order. It also explained to the jury that the restraining order did not involve defendant. These instructions were more than sufficient to cure any prejudice that Damon's and Walker's

testimony may have created. Since the trial court committed no error in denying the motions, we conclude appellate counsel was not ineffective.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division